784 So.2d 396 (2001)
Charles Michael KIGHT, Appellant,
v.
STATE of Florida, Appellee.
No. SC95208.
Supreme Court of Florida.
January 18, 2001.
Rehearing Denied May 4, 2001.
*397 Todd G. Scher, Litigation Director, and Christine Haydinger, Special Assistant CCRC, Office of the Capital Collateral Regional CounselSouth, Fort Lauderdale, *398 FL; and Bret Strand, Tallahassee, FL, for Appellant.
Robert A. Butterworth, Attorney General, and Curtis M. French, Assistant Attorney General, Tallahassee, FL, for Appellee.
PER CURIAM.
Charles Michael Kight, a prisoner under sentence of death, appeals the trial court's denial of his motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Kight was convicted of first-degree murder for the 1982 killing of a Jacksonville cab driver by multiple stab wounds. The evidence against Kight included statements that he made to the police regarding his presence during the killing. However, Kight stated that codefendant Gary Hutto actually stabbed the victim. Kight also took the police to the site where the victim's cab had been driven off a bridge and his jewelry had been hidden in a deserted house. The other evidence presented at trial included: the testimony of four former inmates of the Duval County jail that Kight had bragged about killing the victim and blaming it on Hutto; the testimony of a fifth inmate that Hutto had bragged about killing the victim and getting away with it; and Hutto's testimony[1] that he was present in the cab but that Kight actually killed the victim and that Hutto was so intoxicated from drugs and alcohol that he blacked out and did not remember the incident for four months. The trial court followed the jury's recommendation and imposed the death penalty.
On direct appeal, this Court affirmed Kight's conviction and sentence. See Kight v. State, 512 So.2d 922 (Fla.1987). In our opinion, this Court noted that prior to his direct appeal Kight had filed a "Motion for Leave to File Petition for Writ of Coram Nobis," which was denied. In that motion, Kight alleged newly discovered evidence of Brady[2] violations involving undisclosed concessions made to state witnesses in return for their testimony. 512 So.2d at 933. Because these alleged violations had not been presented to the trial court, this Court declined to reach the merits of the claim and noted that Kight could raise the claim before the trial court in a 3.850 motion for postconviction relief. Id.
After a death warrant was signed in 1989, Kight filed a petition for writ of habeas corpus with this Court and a rule 3.850 motion with the trial court. The trial court summarily denied most of the claims raised in Kight's 3.850 motion, but granted an evidentiary hearing on the claim that the State deliberately used false and misleading testimony and withheld material exculpatory evidence. After the hearing, the trial court denied all relief. On appeal, this Court affirmed the denial of relief, finding that there was competent evidence to support the trial court's denial of relief on the alleged Brady violations. See Kight v. Dugger, 574 So.2d 1066, 1073 (Fla.1990). In denying relief on this claim, the trial court concluded that there were no undisclosed concessions made to the jailhouse informants in exchange for their testimony and that the evidence presented to the court was not material to Kight's conviction and sentence. This Court found that *399 there was sufficient competent evidence to support the trial court's denial of relief on this claim and that it was within the trial court's discretion to find the state witnesses more credible than those of the defense. See id. This Court also denied Kight's habeas petition. Id.
In 1992, Kight filed a petition for a writ of habeas corpus in this Court based on the United States Supreme Court's decision in Espinosa[3] that Florida's instruction on the heinous, atrocious, or cruel aggravating circumstance was unconstitutionally vague. The petition was denied. See Kight v. Singletary, 618 So.2d 1368 (Fla. 1993).
After another witness, William O'Kelly, was located with newly discovered evidence as to Hutto's culpability,[4] Kight filed a second 3.850 motion, raising four claims. The trial court originally denied relief without hearing, but upon a motion for reconsideration filed by Kight, conducted a Huff[5] hearing and subsequently scheduled an evidentiary hearing on the newly discovered evidence claim.[6]
At the evidentiary hearing, O'Kelly testified that Hutto confessed to him that he had stabbed the victim and was going to save himself by blaming Kight because he believed that a mentally challenged person could not be sentenced to death in Florida.[7]
In the order denying relief, the circuit court found that the newly discovered evidence would not have indicated that Kight was innocent of felony murder because, while it implicated Hutto, it did not absolve Kight. While this information could have been helpful during the penalty phase, the court concluded that the new evidence would not probably produce a life sentence if a new penalty phase were granted because it was cumulative to the evidence already presented at trial. However, the court went on to state that Kight's death sentence "appears unconstitutionally disparate" because the record indicates that Hutto's culpability for the murder was at least equal to Kight's. The court found this aspect of the case "very troubling" but, relying on Steinhorst v. Singletary, 638 So.2d 33 (Fla.1994), concluded that the issue was procedurally barred.
On appeal to this Court, Kight raises three claims relating to the denial of his motion for postconviction relief: (1) that the trial court erred in denying sentencing relief after finding that Kight's death sentence is "unconstitutionally disparate"; (2) that the newly discovered evidence of Hutto's *400 involvement entitled Kight to a new trial and sentencing; and (3) that the trial court failed to consider the cumulative effect of all the evidence not presented at Kight's original trial.
In the order denying relief, the trial court concluded that the new evidence presented in O'Kelly's testimony did not absolve Kight of the crime and thus would not result in an acquittal on retrial. The court also concluded that this new evidence was at best cumulative because both the jury and trial judge heard other incriminating statements made by Hutto and were presented forensic evidence that implicated Hutto. Thus, the court concluded "it is hard to imagine how the new evidence... could have affected" the penalty phase outcome.
In addressing Kight's claim of disparate sentencing, the court noted that the record indicates that Hutto's culpability for the murder "was at least equal to that of" Kight and thus Kight's death sentence "appears unconstitutionally disparte [sic]." However, the court ultimately concluded that any claim of disparate sentencing was procedurally barred because "the relative involvement of the two [codefendants] was well known at the time of trial, and argued vigorously at that time."
We agree with Kight that it is contradictory for the trial court to conclude that O'Kelly's testimony constituted newly discovered evidence but that the claim of disparate sentencing was procedurally barred. In order to bring a motion for postconviction relief in a capital case more than one year after the judgment and sentence become final, "the facts on which the claim is predicated [must be] unknown to the movant or the movant's attorney and [must] not have been [ascertainable] by the exercise of due diligence." Fla. R.Crim. P. 3.850(b)(1). Further, a successive motion will be dismissed if "it fails to allege new or different grounds for relief" or if the failure "to assert those grounds in a prior motion constituted an abuse of the procedure." Fla. R.Crim. P. 3.850(f).
In finding the disparate sentencing claim to be procedurally barred, the trial court relied upon this Court's decision in Steinhorst v. Singletary. The petitioner in Steinhorst asked this Court for habeas corpus relief, arguing that his death sentence was disproportionate and a violation of his due process and equal protection rights when compared with the lesser sentences imposed on his codefendants. See 638 So.2d at 34. We determined that Steinhorst's claim was procedurally barred because he had made the same claim in an earlier motion for postconviction relief and had alleged no new facts as a predicate for his successive claim. Id.[8]
The instant case is distinguishable from Steinhorst because Kight's claim of disparate sentencing is predicated on facts unknown to Kight, namely the newly discovered evidence of Hutto's culpability revealed by O'Kelly. Thus, the trial court erroneously concluded that this claim was procedurally barred. However, this does not mean that Kight can prevail on the merits of his disparate sentencing claim.
The real issue here is whether the newly discovered evidence of Hutto's inculpatory statement would preclude a death sentence for Kight when Hutto received a life sentence as a result of his plea bargain *401 with the State. In certain instances this Court has concluded that a codefendant or accomplice's life sentence precluded a death sentence for the defendant. See, e.g., Slater v. State, 316 So.2d 539, 542 (Fla.1975) (holding that less culpable nontriggerman cannot receive a death sentence when the more culpable triggerman receives a life sentence); Hazen v. State, 700 So.2d 1207, 1214 (Fla.1997) (same as to two nontriggermen where one of the defendants is a prime instigator and the other is not). However, disparate treatment of codefendants is permissible in situations where a particular defendant is more culpable. See, e.g., Larzelere v. State, 676 So.2d 394, 406-07 (Fla.1996) (upholding death sentence where evidence showed that defendant was dominating force behind murder and was far more culpable than the State's two key witnesses who were not prosecuted despite involvement in crime). Additionally, in instances where the codefendant's lesser sentence was the result of a plea agreement or prosecutorial discretion, this Court has rejected claims of disparate sentencing. See San Martin v. State, 705 So.2d 1337, 1350-51 (Fla.1997) (upholding court's rejection of codefendant's life sentence as a mitigating circumstance where codefendant's plea, sentence, and agreement to testify for the State were the products of prosecutorial discretion and negotiation); Steinhorst, 638 So.2d at 35 (concluding that codefendant's sentence for second-degree murder was not relevant to claim of disparate sentencing); Brown v. State, 473 So.2d 1260, 1268 (Fla.1985) (finding that death sentence was proper even though accomplice received disparate prosecutorial and judicial treatment after pleading to second-degree murder in return for life sentence). In fact, in one case this Court even stated that "[a]rguments relating to proportionality and disparate treatment are not appropriate... where the prosecutor has not charged the alleged accomplice with a capital offense." Melendez v. State, 612 So.2d 1366, 1368-69 (Fla.1992).
The instant case is factually similar to the cases where the codefendant received a lesser sentence after either pleading to a lesser offense or being charged with a lesser offense. Here, Hutto pled to second-degree murder, and as a part of his plea agreement gave the State the names of witnesses who testified against Kight. However, because Hutto and Kight were not convicted of the same offense, their sentences cannot be "disparate" and Kight is not entitled to relief on this claim.
In his second claim, Kight argues that the newly discovered evidence presented in O'Kelly's testimony entitled him to both a new trial and a new sentencing proceeding. In order to provide relief, "newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. The same standard would be applicable if the issue were whether a life or a death sentence should have been imposed." Jones v. State, 591 So.2d 911, 915 (Fla.1991).
While O'Kelly's testimony corroborated Hutto's involvement in the murder, it did not exonerate Kight. Kight admitted his presence during the robbery and recounted details of the crime to the police. Hutto and Kight's relative involvement in the murder was disputed during trial and the jury heard evidence that implicated Hutto as well as Kight. By means of a special verdict form, the jury specifically found that Kight "actually" killed the victim. The newly discovered evidence in O'Kelly's testimony does not exonerate Kight from killing the victim or participating in his stabbing death, does not indicate that Hutto was more culpable than Kight, does not negate the heinous, atrocious, or cruel aggravating circumstance, and does not change the "sentencing calculus" to the *402 extent that it would probably result in a life sentence for Kight. At best, it just corroborates the evidence already presented at trial that Hutto participated in the stabbing of the victim.[9] Thus, even if O'Kelly's testimony had been presented "at trial," it would not have "probably produce[d] acquittal" and the trial court "on retrial" correctly determined that this newly discovered evidence did not warrant either a new trial or a new penalty phase proceeding.
In claim three Kight contends that the trial court erred in not considering the cumulative effect of all the evidence that was not presented at his trial. He asserts that the outcome of the penalty phase would have been different if the jury had heard all of the evidence presented in both of his postconviction proceedings. See Jones v. State, 709 So.2d 512, 522 (Fla. 1998) ("Because this appeal involves a second evidentiary hearing in which claims of newly discovered evidence were presented and evaluated by a trial judge, we must evaluate all the admissible newly discovered evidence at this hearing in conjunction with newly discovered evidence at the prior evidentiary hearing and then compare it with the evidence that was introduced at trial."); accord Lightbourne v. State, 742 So.2d 238, 247-48 (Fla.1999). We conclude that the newly discovered evidence of O'Kelly's testimony presented in Kight's second postconviction proceeding has no bearing on his previous claim of state misconduct and cannot be the basis for revisiting this claim. Cf. Jones, 709 So.2d at 522 n. 7 (rejecting Jones' argument that we must consider all testimony previously heard at his earlier evidentiary hearings, even if the testimony had previously been found to be barred or not to qualify as newly discovered evidence; Court instead considered only that evidence found to be newly discovered).
In his first postconviction motion, Kight alleged that the state offered improper inducements to four jail informants who testified against him at trial[10] and that the state had suborned perjury by these witnesses. At the postconviction evidentiary hearing in 1989, one of the witnesses, Richard Ellwood, recanted his trial testimony and testified that he had never heard Kight confess to the murder, that the state attorneys knew that his testimony was false, that the state attorneys offered to "help" the informants with their sentences in return for their testimony against Kight, and that the other jail informants had also lied at trial. Charles Sims, another of the jail informants, testified that the state had offered him a deal in exchange for his trial testimony. Sims, however, maintained that his trial testimony regarding Kight's incriminating statements was true. Denise Watson, the lead prosecutor in Kight's trial, testified that she had a very strong case against Kight, including his confession, and would not have called any of the jail informants as witnesses if she had to make concessions to them in exchange for their testimony. Additionally, two other state attorneys who had been involved with Kight's case and the third jail informant[11] testified that there were no bargains or deals offered in exchange for testimony against Kight and that the witnesses had not been coached.
*403 In denying postconviction relief on this claim in 1989, the trial court specifically found that there "`were no undisclosed concessions made to the jailhouse informants by the State Attorney's Office or anyone else.'" Kight v. Dugger, 574 So.2d at 1073 (quoting trial court's order denying relief). In affirming the trial court's denial of relief, this Court concluded that "[t]here was sufficient competent evidence adduced at the rule 3.850 hearing to support the trial court's denial of this claim." Id. We noted that "there was conflicting testimony concerning whether the State made concessions in exchange for the informants' testimony," and therefore "it was within the trial court's discretion to find the state's witnesses more credible than those of the defense." Id. Thus, the issue of alleged state misconduct was resolved on the merits against Kight in his previous 3.850 motion. O'Kelly's testimony that Hutto admitted his involvement in the murder is simply not relevant to any allegations of state misconduct and cannot be the basis for revisiting the issue or reevaluating the informant's recanted testimony.
O'Kelly's testimony, which is cumulative impeachment evidence of Hutto, would not "probably produce an acquittal" or a life sentence in a new proceeding. Thus, Kight is not entitled to a new trial, a new penalty phase, or a new sentencing proceeding on the basis of this new evidence. Accordingly, we affirm the trial court's denial of relief.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, PARIENTE, LEWIS and QUINCE, JJ., concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] Hutto testified as a court witness at Kight's trial on the defendant's request. Hutto had made a plea agreement with the State for second-degree murder in exchange for the names of witnesses who would corroborate his version of the killing. The defense presented witnesses who contradicted Hutto's testimony that he never confessed to killing the victim.
[2] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[3] Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992).
[4] O'Kelly signed an affidavit stating that he had been Hutto's cellmate in the Duval County jail, that Hutto had confessed to the murder of the cabdriver, and that Hutto stated a plan to blame Kight for the murder.
[5] Huff v. State, 622 So.2d 982 (Fla.1993).
[6] The state attorney filed a motion for rehearing questioning Kight's entitlement to a hearing. In support of the motion, the state attorney presented the transcript of an interview with O'Kelly conducted at a Chicago jail. During the interview with the Florida assistant state attorney and an investigator from the state attorney's office, O'Kelly denied the contents of his affidavit and denied ever signing the affidavit. Pursuant to the court's order, the original affidavit was filed with the court and the state attorney's motion was denied.
[7] O'Kelly also offered the following explanation of his recantation in Chicago: At the time that O'Kelly spoke to the Florida assistant state attorney and investigator, he had been arrested on an outstanding Colorado warrant for misdemeanor criminal mischief and was handcuffed to the wall of a holding cell. He told the state attorney and investigator what they wanted to hear because he wanted to be left alone.
[8] Steinhorst argued that his sentence should be reduced pursuant to this Court's decision in Scott v. Dugger, 604 So.2d 465 (Fla.1992), which was issued after his direct appeal and collateral proceedings became final. We concluded that "our decision in Scott was not a jurisprudential upheaval having retroactive effect" and could not overcome the procedural bar. Steinhorst, 638 So.2d at 34.
[9] The jury heard three inculpatory statements by Hutto and were presented forensic evidence that blood on Hutto's clothing was consistent with that of the victim.
[10] At trial, four former inmates at the Duval County jail testified that on various occasions during his incarceration at that facility Kight bragged that he had killed the victim and was going to blame it on Hutto. See Kight v. State, 512 So.2d 922, 924 (Fla.1987).
[11] The fourth jail informant who testified at trial was not called as a witness at the postconviction evidentiary hearing.