786 So.2d 547 (2001)
Gregory MILLS, Appellant,
v.
STATE of Florida, Appellee.
No. SC01-775.
Supreme Court of Florida.
April 25, 2001.
*548 Todd G. Scher, Litigation Director, Capital Collateral Regional Counsel South, Fort Lauderdale, FL, for Appellant.
Robert A. Butterworth, Attorney General, and Kenneth S. Nunnelley and Judy Taylor Rush, Assistant Attorneys General, Daytona Beach, FL, for Appellee.
PER CURIAM.
Gregory Mills, a prisoner under sentence of death and for whom a death warrant has been signed, appeals the trial court's order denying postconviction relief under Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. We affirm the trial court's denial of relief.
On February 13, 2001, Mills filed a consolidated petition for writ of habeas corpus, petition for extraordinary relief, and motion to reopen the direct appeal. Mills raised two issues: (1) that the recent decision in Apprendi v. New Jersey, 528 U.S. 1018, 120 S.Ct. 525, 145 L.Ed.2d 407 (1999), establishes that the override scheme under which Mills was convicted violates the United States and Florida Constitutions; and (2) Tedder v. State, 322 So.2d 908 (Fla.1975), was arbitrarily applied in this case as established by Keen v. State, 775 So.2d 263 (Fla.2000).
On March 22, 2001, Governor Bush signed a death warrant ordering that Gregory Mills' sentence of death be carried out on May 2, 2001. The facts and procedural history leading up to the time the death warrant was signed are set forth in Mills v. Moore, 786 So.2d 532 (Fla. 2001).
Pending this Court's decision on Mills' consolidated petition for writ of habeas corpus, on or around March 27, 2001, Mills made several demands for public records in the trial court.
On April 12, 2001, we released our opinion as to Mills' pending consolidated petition *549 for writ of habeas corpus. We held that Apprendi is not applicable to this case since the majority opinion in Apprendi indicates that Apprendi does not affect capital sentencing schemes. We also held that Tedder was not arbitrarily applied in this case and that Keen is not new law, but merely an application of the long-standing Tedder standard.
On April 16, 2001, Mills filed in the trial court a motion to vacate judgments of conviction and sentence with request for leave to amend, for evidentiary hearing and for stay of execution. Mills raised three claims: (1) there is newly discovered evidence that Vincent Ashley, the codefendant in this case, gave false testimony at trial and lacked credibility, which establishes a reasonable basis for the jury's life recommendation thereby rendering the trial judge's override of the recommendation in error;[1] (2) the "during the course of a felony" aggravating circumstance constitutes an automatic aggravating circumstance and Mills is entitled to reconsideration of this issue and sentencing relief; and (3) Mills has been denied access to public records, which violates his right to due process and equal protection as well as the Eighth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Florida Constitution.
After an evidentiary hearing on April 17, 2001, on the newly discovered evidence issue, the trial court on April 18, 2001, issued an order denying Mills' request for postconviction relief. As to claim I, the trial court held that the new version of Ashley's statement was nothing more than another inconsistent statement made by this witness. The trial court concluded that the new version of Ashley's statement would not have made a difference in the outcome of this case, citing Jones v. State, 591 So.2d 911 (Fla.1991). As to claim II, the trial court held that the issue raised was considered by this Court on direct appeal and in two later petitions for writ of habeas corpus, and is therefore procedurally barred, citing Medina v. State, 573 So.2d 293 (Fla.1990). As to claim III, the trial court held that the demands for public records filed in this case were overly broad, of questionable relevance, and unlikely to lead to discoverable evidence. For the reasons more fully set forth below, we affirm the trial court's denial of relief on the three issues raised in the postconviction motion.

Claim I
Absent an abuse of discretion, a trial court's decision on a motion based on newly discovered evidence will not be overturned on appeal. See Woods v. State, 733 So.2d 980 (Fla.1999); State v. Spaziano, 692 So.2d 174 (Fla.1997); Parker v. State, 641 So.2d 369 (Fla.1994). In this case, the trial court did not abuse its discretion in denying Mills' motion to vacate his sentence based upon newly discovered evidence.
In order to obtain relief on a claim of newly discovered evidence, a claimant must show, first, that the newly discovered evidence was unknown to the defendant or defendant's counsel at the time of trial and could not have been discovered through due diligence and, second, that the evidence is of such a character that it would probably produce an acquittal on retrial. See Jones v. State, 709 So.2d *550 512 (Fla.1998). The same standard is applicable when the issue is whether a life or death sentence should have been imposed. See Jones v. State, 591 So.2d 911, 915 (Fla.1991). We agree with the trial court that the second prong of this test is not met.
Recently in Kight v. State, 784 So.2d 396 (Fla.2001), the defendant and his codefendant Hutto were involved in the murder of a cab driver. Kight was convicted and sentenced to death. Hutto was sentenced to life (he was not charged with a capital offense) after a plea bargain and he agreed to provide the State with certain information. The murder occurred in 1982. Kight filed a second motion for postconviction relief after he discovered that Hutto bragged to another inmate named William O'Kelly that he actually killed the cab driver. Kight alleged that O'Kelly's testimony regarding Hutto's new version of events was newly discovered evidence. The trial court held an evidentiary hearing and determined that while O'Kelly's testimony corroborated Hutto's involvement in the crime, it did not exonerate Kight. There was enough evidence without O'Kelly's testimony for the jury to determine that Kight actually killed the victim. The trial court denied this claim. On appeal, we held that, "even if O'Kelly's testimony had been presented `at trial,' it would not have `probably produce[d] acquittal' and the trial court `on retrial' correctly determined that this newly discovered evidence did not warrant either a new trial or a new penalty phase proceeding." Kight at 402.
Similarly, in this case, the issue is whether Ashley's new version of events would probably produce an acquittal, or rather, whether it would probably have changed the trial judge's decision on the jury override issue. The difference between what Ashley told Mills' attorney and what was presented at trial does not exonerate Mills or change the fact that Mills was the shooter. In both versions, Mills was the one who took the gun with him to the burglary, Mills was the one who carried the gun across the handlebars of his bicycle, Mills was the one who crawled through the window of the house (or at least crawled through first), Mills was the one who had the shotgun inside the house, Mills had the shotgun when the shot was fired that ultimately killed the victim, Mills had the gun when he left the house, and Mills disposed of the gun in a nearby ditch either by tossing it there for hiding or inadvertently leaving it there after he and Ashley huddled for a short time after the murder. Mills' involvement in the murder is the same in both versions. As the trial court below correctly points out, Ashley's new story, referred to as "new evidence" only puts into doubt Ashley's credibility. The new story does not go to the substance of the State's case. At trial, Ashley's credibility was already at issue; the judge and jury knew he lied to officers immediately following the shooting and that he was given immunity for his involvement in this crime and others in exchange for his testimony.
The trial court in this case did not abuse its discretion when it determined that Mills' claim of newly discovered evidence would not produce an acquittal or life sentence on retrial.

Claim II
Since his direct appeal, Mills has repeatedly argued that a person found guilty of felony murder is more likely to receive a death sentence than a person found guilty of premeditated murder because once he has been found guilty of felony murder (in this case, murder committed during the course of a burglary), the aggravating factor that the murder was committed in the course of another dangerous felony becomes automatic. We *551 have repeatedly denied this claim. Mills v. Singletary, 606 So.2d 622 (Fla.1992) (holding Stringer v. Black, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), was not a change in the law that warranted retroactive application and thus Mills' claim that the felony murder aggravator was an unconstitutional automatic aggravating circumstance in felony murder cases was procedurally barred); Mills v. Dugger, 559 So.2d 578 (Fla.1990); Mills v. State, 476 So.2d 172, 178 (Fla.1985) (citing State v. Dixon, 283 So.2d 1 (Fla.1973)). The Eleventh Circuit Court of Appeals also reviewed Mills' claim as to this issue and found Mills' claim not only procedurally barred, but meritless as well. Mills v. Singletary, 161 F.3d 1273, 1287 (11th Cir. 1998).
As the trial court held, this issue is procedurally barred. See Medina; Parker v. Dugger, 550 So.2d 459 (Fla.1989).

Claim III
Mills argues the trial court erred in denying his requests for public records pursuant to Florida Rule of Criminal Procedure 3.852(h)(3).[2] On or about March 27, 2001, Mills filed demands for public records from a variety of state agencies pursuant to article I, section 24, Florida Constitution, Florida Rule of Criminal Procedure 3.852(h)(3) and (i), chapter 119, Florida Statutes (2000), Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Strickler v. Greene, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).[3] Mills supplemented these demands with a motion to compel filed on April 10, 2001. On April 12, 2001, the trial court held a hearing on Mills' motion to compel the production of public records for the purpose of resolving all pending public records requests and objections. On April 18, 2001, the trial court denied Mills' motion for postconviction relief, including his public records claim. Relying on Sims v. State, 753 So.2d 66 (Fla.2000), the trial court found Mills' public records requests to be overly broad, of questionable relevance, and unlikely to lead to discoverable evidence. The trial court sustained objections to the production of public records and denied further *552 disclosure of public records because Mills' demands "far exceed the limited purpose of subsection 3.853(h)(3)." Mills appeals the trial court's order denying relief.
This Court recently addressed similar public records claims in Glock v. Moore, 776 So.2d 243 (Fla.2001), and Sims v. State, 753 So.2d 66 (Fla.2000). In both cases, the defendant made broad public records requests after the death warrant was signed. Likewise, in both cases, this Court affirmed the trial court's denial of the defendant's motion to compel. In Sims, we stated:
The language of section 119.19 and of rule 3.852 clearly provides for the production of public records after the governor has signed a death warrant. However, it is equally clear that this discovery tool is not intended to be a procedure authorizing a fishing expedition for records unrelated to a colorable claim for postconviction relief. To prevent such a fishing expedition, the statute and the rule provide for the production of public records from persons and agencies who were the recipients of a public records request at the time the defendant began his or her postconviction odyssey. The use of the past tense and such words and phrases as "requested," "previously," "received," "produced," "previous request," and "produced previously" are not happenstance.
This language was intended to and does convey to the reader the fact that a public records request under this rule is intended as an update of information previously received or requested. To hold otherwise would foster a procedure in which defendants make only a partial public records request during the initial postconviction proceedings and hold in abeyance other requests until such time as a warrant is signed. Such is neither the spirit nor intent of the public records law. Rule 3.852 is not intended for use by defendants as, in the words of the trial court, "nothing more than an eleventh hour attempt to delay the execution rather than a focused investigation into some legitimate area of inquiry."
753 So.2d at 70.
The record supports the trial court's finding that the demands filed in this case are overly broad, of questionable relevance, and unlikely to lead to discoverable evidence. Mills requested public records from fifteen different agencies, and in most of his demands, requested "[a]ll notes, memoranda, letters, electronic mail, and/or files, drafts, charts, reports, and/or other files generated or received by any and all members of your agency which are related to Gregory Mills." Interestingly, many of the records Mills requested were produced, although some over objection. Objections to the production of the remaining records were sustained after argument by the parties and consideration by the trial court at the public records hearing on April 12, 2001.
Based on the record before us, Mills did not make the requisite showing for the additional records. Accordingly, the trial court did not abuse its discretion in denying the request for further production of public records.
For the reasons stated above, we affirm the order of the trial court denying post-conviction relief.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, LEWIS and QUINCE, JJ., concur.
ANSTEAD, J., concurs specially with an opinion, in which PARIENTE, J., concurs.
*553 ANSTEAD, J., specially concurring.
I reluctantly concur in the majority's conclusion that the appellant has failed to demonstrate any error in the trial court's disposition of the limited issues presented below. As noted by the trial court, Mills' plea for relief at the trial court level was essentially pointless, since he had already received a favorable jury decision for life at his original trial:
The jury already knew Ashley had lied about his involvement in the murder shortly after it happened and they knew he was an accomplice who had received absolute immunity from prosecution for his role in it. Thus, showing the jury that the witness had credibility problems through another inconsistent statement would not have mattered. In fact, and this is the most troubling aspect of this case, the jury recommended a life sentence. That means the jury either considered the disparate treatment given to Ashley by the State or Ashley's credibility problems (or possibly both) in making that recommendation. It is the trial judge's override of the jury recommendation that has been the focus of concern.
Of course, the trial court's observation is correct. There is really nothing a trial court can do when the fundamental problem that remains unaddressed was created by this Court's error in allowing a trial judge to arbitrarily override a jury's patently reasonable decision to spare Mills' life. Only this Court can correct that error. Interestingly, the trial court's concerns are echoed in the observations of the federal district court that earlier reviewed Mills' case:
While the majority of the Supreme Court of Florida stated the test for a "jury override" by the trial court to be that the facts suggesting a sentence of death are so clear and convincing that no reasonable person could differ, this Court notes that two members of the Supreme Court of Florida dissented on the merits to the imposition of a death penalty in this case. Mills, 476 So.2d at 180. From this Court's own research, it appears that in other cases a jury override by the trial court has been upheld by the Supreme Court of Florida in spite of dissents on the merits by one or more members. E.g., Marshall v. State, 604 So.2d 799 (Fla.1992) (dissents by Justices Barkett, Shaw, and Kogan); Brown v. State, 473 So.2d 1260 (Fla. 1985) (dissents by Justices McDonald and Overton); Engle v. State 510 So.2d 881 (Fla.1987) (dissent by Justice Barkett). In these cases, there does not appear to be any discussion of the meaning of that part of the test employed in Florida for determination of the propriety of a trial court's override of a jury recommendation of life imprisonment, to wit, "that virtually no reasonable person could differ." This leaves unanswered the question whether the majority of the court is implicitly finding the dissents to be unreasonable or whether the test as stated by the Florida courts simply conflicts on the face of the opinion which contain such dissent(s). Thus while in this case a harmless error analysis appears to have been undertaken by the state supreme court, this Court is troubled by the test being espoused by such court in this jury override case and its purported application to the facts of this case. This issue, however, has not been raised by the parties to this proceeding.
Mills v. Singletary, No. 92-1184-CIVORL-19, order at 36 n. 12 (M.D.Fla. Aug. 19, 1996).
What remains apparent is that a miscarriage of justice, and a palpable violation of due process, has occurred in Mills' case predicated upon this Court's erroneous application *554 of the rule of Tedder v. State, 322 So.2d 908 (Fla.1975) to his case as this Court has previously acknowledged in Cochran v. State, 547 So.2d 928 (Fla.1989). Our refusal to act upon our acknowledgment of error in Cochran, and to properly apply Tedder to sustain the trial jury's determination that Mills' life be spared, has resulted in a patently arbitrary decision that Mills be executed while other similarly-situated defendants who received a jury vote for life will live. See Keen v. State, 775 So.2d 263 (Fla.2000).
PARIENTE, J., concurs.
NOTES
[1] In the motion for postconviction relief, Mills alleged that Ashley told Mills' attorney a version of the events for the night of the murder that differed from Ashley's trial testimony. At the evidentiary hearing Ashley refused to testify. The parties then stipulated that had Ashley testified his testimony would be substantially as outlined in the postconviction motion.
[2] Florida Rule of Criminal Procedure 3.852(h)(3) provides:

Within 10 days of the signing of a defendant's death warrant, collateral counsel may request in writing the production of public records from a person or agency from which collateral counsel has previously requested public records. A person or agency shall copy, index, and deliver to the repository any public record:
(A) that was not previously the subject of an objection;
(B) that was received or produced since the previous request; or
(C) that was, for any reason, not produced previously.
The person or agency providing the records shall bear the costs of copying, indexing, and delivering such records. If none of these circumstances exist, the person or agency shall file with the trial court and the parties an affidavit stating that no other records exist and that all public records have been produced previously. A person or agency shall comply with this subdivision within 10 days from the date of the written request or such shorter time period as is ordered by the court.
[3] Mills requested public records from the following agencies: (1) Florida Department of Law Enforcement; (2) Florida Department of Corrections; (3) Orlando Police Department; (4) Office of the State Attorney, Eighteenth Judicial Circuit; (5) Office of Executive Clemency; (6) Florida Parole Commission; (7) Florida Department of State, Division of Elections; (7) Seminole County Sheriff's Office; (8) City of Sanford Police Department; (9) Seminole County Medical Examiner's Office; (10) Florida Attorney General's Office; (11) Seminole County Jail; (12) Florida Department of Children and Families; (13) Lancaster Youth Development Center; (14) Arthur G. Dozier School for Boys; and (15) Florida Department of Juvenile Justice.