820 So.2d 199 (2002)
Thomas James MOORE, Appellant,
v.
STATE of Florida, Appellee.
Thomas James Moore, Petitioner,
v.
Michael W. Moore, Secretary, Florida Department of Corrections, Respondent.
Nos. SC00-2483, SC01-708.
Supreme Court of Florida.
March 7, 2002.
Rehearing Denied June 20, 2002.
*202 Michael P. Reiter, Capital Collateral Counsel-Northern Region, and John M. Jackson, Assistant CCRC-Northern Region, Office of the Capital Collateral Representative-Northern Region, Tallahassee, FL, for Appellant/Petitioner.
Robert A. Butterworth, Attorney General, and Stephen R. White, Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Thomas James Moore, an inmate under sentence of death, appeals an order of the circuit court denying a motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons that follow we affirm the denial of Moore's postconviction motion and deny the petition for habeas corpus.

PROCEDURAL HISTORY
In 1993, Thomas James Moore was convicted of first-degree murder, attempted armed robbery, conspiracy to commit armed robbery, armed burglary, and arson in the robbing and killing of John Edward Parrish. The facts surrounding these crimes are discussed in Moore v. State, 701 So.2d 545, 547 (Fla.1997).[1] This Court affirmed Moore's convictions and sentence. See id. at 552. The U.S. Supreme Court denied Moore's petition for certiorari on April 20, 1998. See Moore v. Florida, 523 U.S. 1083, 118 S.Ct. 1536, 140 L.Ed.2d 685 (1998).
Postconviction counsel was designated for Moore on July 22, 1998. After receiving a series of extensions to file his 3.850 motion, Moore filed his second amended 3.850 motion on September 20, 1999. The lower court conducted a Huff[2] hearing on April 20, 2000, and denied all claims without an evidentiary hearing. Moore's motion for rehearing was denied on September 8, 2000. Moore now appeals that denial of his postconviction motion, raising eleven claims.[3]

*203 3.850 Appeal
At the outset, we dispose of the following postconviction claims because they are either procedurally barred, facially or legally insufficient, clearly without merit as a matter of law, or moot.[4] We now turn to address the remainder of Moore's claims.
First, Moore argues the trial court abused its discretion by refusing to order state agencies to comply with Moore's request for additional public records.[5]
On August 19, 1998, Moore initiated his public records request pursuant to Florida Rule of Criminal Procedure 3.852 (1996) by requesting various public records from *204 the following agencies: (1) Department of Corrections; (2) Jacksonville Medical Examiner; (3) Fourth Circuit State Attorney's Office; (4) Jacksonville Sheriff's Office; and (5) Attorney General. Shortly thereafter on September 21, 1998, Moore requested public records from the Human Resources Division of the City of Jacksonville. Subsequently, and pursuant to Florida Rule of Criminal Procedure 3.852(h)(2) (1998), Moore made additional requests for public records on December 28, 1998 to the following agencies: (1) Jacksonville County Jail; (2) Jacksonville Fire and Rescue; (3) Jacksonville Sheriff's Office; (4) Human Resources DivisionCity of Jacksonville; (5) Florida Department of Law Enforcement; (6) The Florida Bar; (7) Department of Corrections; (8) Fourth Circuit State Attorney's Office; and (9) Duval County Clerk of the Circuit Court. In Moore's brief to this Court, however, he only appears to be challenging lack of compliance with public records laws by the Jacksonville Sheriff's Office and the State Attorney's Office.
Moore first claims that the lower court erred in failing to hold a hearing on Moore's motions to compel, as well as the other pending public records requests and, thus, violated Moore's due process rights. When a capital defendant claims that a state agency is withholding pertinent public records, the trial court should hold a hearing regarding such claims. See Reed v. State, 640 So.2d 1094, 1098 (Fla.1994). In this case, however, the trial court held no fewer than three hearings pertaining to Moore's public records requests on the following dates: April 29, 1999; March 8, 2000; and April 20, 2000. Objections to the production of the additional records were only sustained after lengthy arguments by the parties and consideration by the trial court at each of these public records hearings.
Second, Moore argues that, despite his request, he was not provided the complete Jacksonville Sheriff's Office ("JSO") investigative file regarding Moore. The trial court, however, specifically heard arguments regarding this matter during its March 8, 2000, hearing, and subsequently issued an order directing the JSO to provide any such investigative files to Moore no later than March 17, 2000. Such files were made available to Moore not later than March 25, 2000. More importantly, Moore has made no showing that there is any additional information that has not been disclosed. Also, the trial court delayed the scheduled Huff hearing so as to provide Moore with an additional 20 days (subsequent to receiving the records) to amend his 3.850 motionshould he find any new information in the files.
Third, Moore contends that the trial court abused its discretion by refusing to order the JSO and State Attorney's Office to comply with Moore's requests for additional public records. This Court applies an abuse of discretion standard when reviewing a trial court's determination that a defendant's right to public records was not denied. See Mills v. State, 786 So.2d 547, 552 (Fla.2001); Glock v. Moore, 776 So.2d 243, 254 (Fla.2001).
In Mills, this Court held that the trial court did not abuse its discretion in denying a request for further production of public records where the record supports the trial court's finding that the demands are overly broad, of questionable relevance, and unlikely to lead to discoverable evidence. See Mills, 786 So.2d at 552. Moreover, this Court has stated, rule 3.852 "is not intended to be a procedure authorizing a fishing expedition for records unrelated to a colorable claim for postconviction relief." See Glock v. Moore, 776 So.2d 243, 253 (Fla.2001) (quoting Sims v. State, 753 So.2d 66, 70 (Fla.2000)). Given *205 Moore's own delays in reviewing available records and his failure to comply with the requirements of Florida Rule of Criminal Procedure 3.852(i) regarding requests for additional public records, we find that the trial court did not abuse its discretion in rejecting Moore's requests for additional public records.
Moore next claims the lower court erred in refusing to consider Moore's third amended motion to vacate his judgment of conviction and sentence. We find, however, that the trial court did not abuse its discretion in striking Moore's third amended 3.850 motion.
This Court has permitted amendments to rule 3.850 motions for postconviction relief upon the receipt of public records to include and new or additional claims in light of information obtained from the furnished documents. See Ventura v. State, 673 So.2d 479, 481 (Fla.1996); Reed, 640 So.2d at 1098; Muehleman v. Dugger, 623 So.2d 480, 481 (Fla.1993). However, a second or successive motion for postconviction relief can be denied on the ground that it is an abuse of process if there is no reason for failing to raise the issues in the previous motion. See Pope v. State, 702 So.2d 221, 223 (Fla.1997).
In this case, on March 8, 2000, and consistent with this Court's direction in Ventura, the trial court expressly invited Moore to amend his second amended 3.850 motion based upon any new information he received from the records he was pursuing:
If they come up with something as a result of obtaining the investigative file that they feel is something that can be added to the second amended or third amended, whatever we are on, 3.850, they are to, within 20 days from the March 17th, furnish proposed amendments to the state attorney's office and/or the attorney general.
Also, before the Huff hearing, the trial court expressly invited Moore to tender any claims that arose due to recently provided public records information. Moore's counsel could not show the trial court any substantive postconviction allegation that had come to light due to any public records that had been belatedly provided. Accordingly, the trial court found that "there are no proposed amendments that met the criteria that I set forth on March 8th."[6]
Although given the opportunity to amend as established in Ventura, Moore has not otherwise tendered to the trial court any properly sworn additional claims or factual allegations made possible by the intervening public records disclosure. Furthermore, there has been no showing that the State caused any material deficiency in Moore's postconviction motions. Given the multiple extensions and opportunities *206 it had already gratuitously provided Moore,[7] the trial court's ruling appears reasonable. See Johnson v. State, 769 So.2d 990, 994 (Fla.2000) (finding no abuse of discretion in the circuit court's refusal to allow defendant additional time to review the records when defendant was permitted to raise any new facts or claims in amended 3.850).
Moore next asserts that the trial judge erred by denying Moore's motion to disqualify him in this case. However, a motion to disqualify will be dismissed as legally insufficient if it fails to establish a well-grounded fear on the part of the movant that he will not receive a fair hearing. See Correll v. State, 698 So.2d 522, 524 (Fla.1997); Quince v. State, 592 So.2d 669, 670 (Fla.1992). In determining whether a motion to disqualify is legally sufficient, this Court looks to see "whether the facts alleged would place a reasonably prudent person in fear of not receiving a fair and impartial trial." Livingston v. State, 441 So.2d 1083, 1087 (Fla.1983). However, a movant's subjective fears or speculation are not reasonably sufficient to justify a well-founded fear of prejudice. See Arbelaez v. State, 775 So.2d 909 (Fla.2000); 5-H Corp. v. Padovano, 708 So.2d 244, 248 (Fla.1997); Fischer v. Knuck, 497 So.2d 240, 242 (Fla.1986). Further, it is well settled that an adverse decision will not serve as the basis for a motion to disqualify. See Correll, 698 So.2d at 525; Barwick v. State, 660 So.2d 685, 692 (Fla.1995).
The gravamen of Moore's claim appears among the language included in the trial court's August 17, 1999, order granting Moore an extension to file his second amended 3.850 motion. Although the lower court extended the deadline for submission of the motion from August 14, 1999, to September 20, 1999, the order included language that it would "not entertain any further motions for extension of time, nor will this Court entertain any further motions for rehearing as to this deadline, no matter how entitled." This statement, however, should be read in context of the court's order which explains the rationale for its decision to deny further extensions:
The defendant seeks reconsideration of this Court's Order granting him thirty (30) days of additional time in which to file a second amended motion for post-conviction relief in this capital case. The defendant filed a shell motion for post-conviction relief, with a request for leave to amend that motion, on March 29, 1999 [i.e., 11 months into the 12 month period permitted by Fla. R.Crim. P. 3.851]. The defendant filed his thirty-three (33) ground, one-hundred and six (106) page amended motion on June 22, 1999. The defendant sought additional time in which to file yet another amended motion. This Court granted the defendant an additional thirty (30) days in which to file a final amended motion. In the defendant's instant motion for reconsideration, and supplement thereto, the defendant complains that this Court is *207 not giving him enough time to obtain public records pursuant to Florida Rule of Criminal Procedure 3.852, and he cites to cases in which the Supreme Court of Florida has given defendants additional time in which to file an amended motion following the receipt of public records. The court file in this case reflects that the defendant began making public records requests on August 19, 1998.
Clearly, the context of the court's order at issue surrounded Moore's seemingly incessant requests for additional public records and requests for additional time. Furthermore, it is clear from the record that, prior to the time of this order granting Moore additional time amend his 3.850, the trial court had already conducted an extended public records hearing, issued six separate orders regarding such, entertained two motions for reconsideration by Moore on the public records issue (plus one supplement to the latter motion regarding public records), and previously granted Moore's request for additional time to file his second amended 3.850 motion.
Given the context of the court's ruling seemingly limited to any further extensions with respect to public records issues (which had already been extensively argued and ruled upon)Moore fails to establish a well-grounded fear that he would not receive a fair hearing. See Correll, 698 So.2d at 524. Rather, the record indicates that the trial court was quite permissive in granting Moore's extensions and appeared to bend over backwards to hear and address his continued requests for public records.[8] Obviously the trial court is in the best position to weigh the equities involved and, given these facts, it was clearly within the court's discretion to refuse to entertain any more requests for extensions pertaining to the public records issue. See Ayo v. State, 708 So.2d 692 (Fla. 5th DCA 1998) (holding that absent an abuse of discretion, a trial court's decision to permit or refuse to allow an amendment to a 3.850 motion will not be disturbed on appeal).
Lastly, Moore claims that defense counsel was ineffective for failing to object to the following remarks made by the prosecutor during the State's guilt and penalty phase arguments:
Crime conceived in hell will not have any angels as witnesses. And, ladies and gentleman, as true as that statement is, Grand Park is hell. And that man right there is the devil....
Ladies and gentlemen, deals. Yes, ma'am, yes, ma'am, yes, sir, to all of you. I have dealt with [co-defendant 1] and I have dealt with [co-defendant 2]. I did that as an Assistant State Attorney. I did that the best I knew how. But, ladies and gentlemen, sometimes you have to deal with sinners to get the devil. And I would submit to you what the State did was we dealt with this sinner and we dealt with this sinner to get this devil.
In order to prevail on a claim of ineffective assistance of counsel, however, a defendant must demonstrate that (1) counsel's performance was deficient and (2) there is a reasonable probability that the outcome of the proceeding would have *208 been different. See Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As to the first prong, the defendant must establish that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. 2052; see Cherry v. State, 659 So.2d 1069, 1072 (Fla.1995). For the prejudice prong, the reviewing court must determine whether there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different. See Strickland, 466 U.S. at 695, 104 S.Ct. 2052; see also Valle v. State, 705 So.2d 1331, 1333 (Fla.1997). "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
First, it should be recognized that this Court has continually expressed its intolerance for improper prosecutorial arguments and comments, especially in death cases.[9] However, the two isolated references to Moore as "the devil" in this instance, although ill advised, appear to be less problematic than the pervasive and extensive conduct condemned in Brooks and Urbin. Rather, this case appears to be more akin to Chandler v. State, 702 So.2d 186, 191 n. 5 (Fla.1997), where this Court held that a prosecutor's isolated comments that defense counsel engaged in "cowardly" and "despicable" conduct and that the defendant was a "malevolent ... a brutal rapist and conscienceless murderer" was not so prejudicial as to vitiate the entire trial. See also Carroll v. State, 815 So.2d 601 (Fla.2002) (finding prosecutor's isolated statements that defendant was the "boogie man" and a "creature that stalked the night" who "must die" not so egregious or cumulative in scope to be error). Further, given the evidence in this case and the finding of three aggravating circumstances and only one statutory mitigating circumstance given slight weight, there is no reasonable probability that, but for the deficiency, the result of the proceeding would have been different. See Strickland, 466 U.S. at 695, 104 S.Ct. 2052. Accordingly, we deny Moore's claim.[10]

*209 Habeas Corpus
Moore raises nine claims of ineffective assistance of appellate counsel in his petition for habeas corpus.[11] We deny Moore's claims as procedurally barred[12] or wholly without merit. Claim (2) is without merit because this Court addressed proportionality in Moore's direct appeal and held that the death sentence was proportionate. See Moore v. State, 701 So.2d at 551. Appellate counsel cannot be ineffective for failing to raise a nonmeritorious claim. See Freeman v. State, 761 So.2d 1055, 1070-71 (Fla.2000). Moreover, this Court has already rejected Moore's argument in Ferguson v. Singletary, 632 So.2d 53, 58 (Fla.1993). We find claim (4) to be without merit because we have held appellate counsel is not ineffective in failing to raise allegedly improper comments by the prosecutor at the penalty phase when they are not preserved for appeal by objection. See Ferguson, 632 So.2d at 58. Likewise, we find claim (6) to be without merit because we have held it is permissible for a neutral witness to give hearsay testimony as to the details of a prior violent felony, provided it is not made a feature of the trial. See, Rodriguez v. State, 753 So.2d 29, 44-45 (Fla. *210 2000). Claim (7) is without merit because we have consistently rejected Moore's burden shifting argument, see, e.g., Demps v. Dugger, 714 So.2d 365, 368 (Fla.1998), and issues that would have been nonmeritorious in the direct appeal are not the basis for ineffective assistance of appellate counsel. See Freeman, 761 So.2d at 1070-71. We have also held appellate counsel is not ineffective for failing to argue that the trial court erred in refusing to give a penalty phase jury instruction that the jury could properly consider mercy during its deliberations when the court gives the standard penalty phase jury instructions and advises the jury that it can consider any other aspect of the defendant's character and any other circumstances of the offense. See Correll v. Dugger, 558 So.2d 422, 424 (Fla.1990). Accordingly, we find claim (8) to be meritless. Finally, we reject claim (9) because there is no cumulative error to consider. See Mann v. Moore, 794 So.2d 595 (Fla.2001) (finding no cumulative effect to consider where all claims were either meritless or procedurally barred and therefore denying habeas petition).
Accordingly, we affirm the trial court's denial of Moore's 3.850 motion and deny the petition for habeas corpus.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, PARIENTE, LEWIS, and QUINCE, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion.
ANSTEAD, J., concurring in part and dissenting in part.
I concur in the majority opinion in all respects, except for the public records issue. This Court has repeatedly held that the prompt disclosure of public records is essential to the fair and orderly disposition of postconviction claims. In this case, the main criminal investigating agency was the sheriffs office. However, despite defendant's numerous and repeated requests for full disclosure of the sheriff's records, we cannot determine from this record what records the sheriffs office accumulated and whether they still exist. The trial court never conducted an evidentiary hearing to resolve this issue. It should not be difficult for someone in charge of records at the sheriffs office to disclose to the trial court what records were compiled in this case. Because we do not know the answer to that question, we should not leave this important issue hanging.
NOTES
[1] The jury recommended a death sentence by a vote of nine to three. See Moore, 701 So.2d at 547. The trial judge found three aggravating circumstances (previously convicted of the violent felonies of armed robbery and aggravated battery; committed the capital felony for the purpose of avoiding arrest; committed the capital felony for pecuniary gain). See id. In mitigation, the court gave Moore's age of 19 slight weight (he had been tried as an adult at age 15 for his prior armed robbery charge) and gave testimony regarding Moore's character, offered as nonstatutory mitigation, little value because the witnesses had little knowledge of Moore's criminal history. See id. The trial judge followed the jury's recommendation and imposed death. See id.
[2] Huff v. State, 622 So.2d 982 (Fla.1993).
[3] The eleven claims are: (1) the trial court abused its discretion by refusing to order state agencies to comply with Moore's request for additional public records; (2) the trial court erred by denying Moore an evidentiary hearing on his rule 3.850 claims regarding newly discovered evidence and ineffective assistance of counsel; (3) the trial court erred in refusing to consider Moore's third amended 3.850 motion; (4) the trial court erred by denying Moore's motion to disqualify the trial judge; (5) the omission of a pretrial conference from the record denied Moore a proper appeal; (6) Moore's constitutional right to be present at all critical stages of trial was violated; (7) Moore did not receive a mental exam by a competent, confidential expert, to which he is entitled under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); (8) section 922.105(1)-(2), Florida Statutes (1999), violates the constitutional requirement for a knowing and voluntary waiver of one's fundamental constitutional rights; (9) the trial court erred in rejecting Moore's claim that several statements made by the prosecutor deprived him of a fair trial; (10) Florida's use of electrocution as its method of execution is unconstitutional; and (11) the standard instructions regarding the pecuniary gain aggravator are constitutionally defective.
[4] We decline to address claim (2) and the associated subclaims contained therein. First, the trial court properly found that Moore failed to allege the factors prerequisite to relief on a newly discovered evidence claim and, thus, was not entitled to an evidentiary hearing. See Davis v. State, 736 So.2d 1156, 1158-59 (Fla.1999) ("To be entitled to an evidentiary hearing on a newly discovered evidence claim, Davis must, in addition to satisfying the due diligence requirement of rule 3.850(b), allege that he has discovered evidence which is `of such nature that it would probably produce an acquittal on retrial.'"). Second, a defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing, as did Moore here. See Ragsdale v. State, 720 So.2d 203, 207 (Fla.1998); Kennedy v. State, 547 So.2d 912, 913 (Fla.1989).

Claims (5), (6), (7), and (11) are procedurally barred because they could and should have been raised on direct appeal. See Hardwick v. Dugger, 648 So.2d 100, 105 (Fla.1994) (denying postconviction relief where defendant failed to raise issues of omissions in the record and absence from critical stage of trial on direct appeal); see also Harvey v. Dugger, 656 So.2d 1253 (Fla.1995) (holding that "issues that could have been, but were not, raised on direct appeal are not cognizable through collateral attack"). Finally, claims (8) and (10) have previously been rejected by this Court and, therefore, are without merit. See Bryan v. State, 753 So.2d 1244, 1255 (Fla.2000); see also Provenzano v. State, 739 So.2d 1150, 1153 (Fla.1999).
[5] In its order denying Moore postconviction relief, the lower court rejected Moore's claim that the trial court erred in refusing to order state agencies to comply with Moore's request for additional records and made the following finding:

First, this Court finds this claim to be facially insufficient as a matter of law. Second, this Court finds that the records relevant to this case have been furnished to the defendant. Finally, this Court finds that the defendant's demands for additional records are not only legally insufficient, but they are tantamount to a fishing expedition, and further, that they are an effort to force agencies to engage in that fishing expedition for him while he sits on his laurels. This Court finds that this claim is not only meritless, but is knowingly and intentionally raised for the purposes of delay and to support claims regarding the procedural time limits governing capital post-conviction motions.
Order Denying Postconviction Relief at 3, State v. Moore, No. 93-1659-CF (Fla. 4th Cir. Ct. Aug. 2, 2000) (citations omitted).
[6] In its order denying postconviction relief, the lower court specifically stated:

At a hearing held by this Court on March 8, 2000, this Court ordered the State to provided [sic] the defendant with the investigative file of the Jacksonville Sheriff's Office by March 17, 2000, and further ordered that the defendant could file proposed amendments (if any arose) to his existing motion, that were based on information derived from the Jacksonville Sheriff's Office investigative file, within twenty (20) days of March 17, 2000. Instead of following this direction, the defendant filed a Third Amended Motion (with yet another request for leave to amend) on April 6, 2000. Given that the defendant not only failed to follow this Court's explicit instructions, but his Third Amended Motion contains amendments not authorized by this Court, this Court will not consider the defendant's untimely and unauthorized Third Amended Motion.
Order Denying Defendant's Motion for Post Conviction Relief at 2.
[7] On March 26, 1999, Moore filed a "shell" postconviction motion. Moore subsequently filed an amended motion on June 22, 1999. On July 14, 1999, in response to Moore's request for an extension, the lower court entered an order granting Moore an additional 30 days to file a final amended 3.850 motion. On August 19, 1999, in response to Moore's motion for reconsideration, the lower court granted Moore another 32 days to file his final amended 3.850 motion. On February 9, 2000, the lower court scheduled a Huff hearing and a public records hearing for the same day. At that hearing, the lower court ordered the Jacksonville Sheriff's Office to turn over an investigative file and the State Attorney's Office to do a "computer run" on names supplied by Moore. At the same hearing, the lower court granted Moore 20 additional days (from the date the agencies were to provide the records) "to file proposed amendments" to his amended 3.850 motion.
[8] Although in its July 14, 1999, order granting Moore an extension to file his second amended 3.850, the trial court stated, "No further extensions of time will be entertained," the court nonetheless granted Moore a 30-day extension. The trial court also permitted Moore the opportunity to amend his second amended 3.850 motion after the March 8, 2000, public records hearing should he find any new information from previously undisclosed public records.
[9] See, e.g., Brooks v. State, 762 So.2d 879, 905 (Fla.2000) (finding reversible error based on numerous, overlapping improprieties in the prosecutor's penalty phase closing argument comments including: impermissibly inflaming the passions and prejudices of the jury with elements of emotion and fear by using the word "executed" or "executing" at least six times; engaging in pejorative characterizations of the defendant; urging the jurors to show the defendant the same mercy shown the dead victim; impermissibly arguing "prosecutorial expertise" in stating that the State had already determined that this was a genuine death-penalty case; misstating the law regarding the merged robbery and pecuniary gain aggravating circumstances; personally attacking defense counsel; and improperly denigrating the defendant's mitigation evidence by characterizing the mitigating circumstances as "flimsy," "phantom," and "excuses"); see also Urbin v. State, 714 So.2d 411, 418-22 (Fla.1998) (disapproving prosecutor's improper closing penalty-phase argument where argument was full of emotional fear and efforts to dehumanize and demonize the defendant; prosecutor used the word executed or executing at least nine times, described 17-year old defendant as a cold-blooded and ruthless killer, stated several times that offenses exhibited deep-seated, vicious or brutal violence, that defendant was violent to the core and in every atom of his body, and that he showed his true, violent, and brutal and vicious character in committing the murder).
[10] Also, Moore's claim that he was improperly prejudiced by the prosecutor's remarks could have been raised on direct appeal and, therefore, the trial court correctly found this claim to be procedurally barred. See Hardwick, 648 So.2d at 100. Furthermore, we reject Moore's claim that, during voir dire, the prosecutor improperly attempted to shift to Moore the burden of proving whether he should live or die. We have consistently held that the burden-shifting argument is without merit. See Demps v. Dugger, 714 So.2d 365, 368 (Fla.1998); Johnson v. State, 660 So.2d 637, 647 (Fla.1995). We also note that Moore's claim that the prosecutor improperly argued that the mitigation testimony and evidence presented by the defense should be considered as aggravation by the jury was presented upon direct appeal and found to have no merit. See Moore v. State, 701 So.2d at 551. Issues that were raised on direct appeal are procedurally barred and cannot be raised in a postconviction motion. See Hardwick v. Dugger, 648 So.2d 100, 103 (Fla.1994).
[11] Moore's nine claims are: (1) appellate counsel was unconstitutionally ineffective for failing to argue that Moore's constitutional rights were violated by Moore's absence from a June 23, 1999, pretrial discussion among counsel and by the failure to have the discussion transcribed; (2) appellate counsel was unconstitutionally ineffective for failing to argue that Moore's sentence was disproportionate; (3) appellate counsel was unconstitutionally ineffective for failing to argue that the trial court was clearly erroneous in permitting the prosecutor to use peremptory challenges to strike venirepersons Dunbar, Pitts, Washington, and Carter; (4) appellate counsel was unconstitutionally ineffective for failing to argue that the prosecutor's arguments constituted fundamental error; (5) appellate counsel was unconstitutionally ineffective for failing to argue that the trial court committed fundamental error in allowing the penalty-phase jury to hear testimony regarding Moore's prior armed robbery conviction; (6) appellate counsel was unconstitutionally ineffective for failing to argue that victim impact evidence and the attendant statute deprived Moore of a fair sentencing; (7) appellate counsel was unconstitutionally ineffective for failing to argue that the standard penalty-phase jury instructions improperly shifted the burden of proof to Moore; (8) appellate counsel was ineffective for failing to raise the claim that Moore was denied his right to a fair sentencing when the trial court denied his request for an instruction that the jury could consider mercy in its sentencing decision; and (9) appellate counsel was constitutionally ineffective for failing to argue that Moore's penalty phase, when viewed as a whole, violated his constitutional rights.
[12] Claim (1) is a reargument of claims (5) and (6) of Moore's 3.850 postconviction appeal couched in an ineffective assistance of appellate counsel argument and, to the extent Moore is attempting to use this habeas petition as a substitute or an additional appeal of his postconviction motion, we deny relief. See Hardwick, 648 So.2d at 105. Claim (3) is an issue that could have been raised on direct appeal or in a 3.850 motion and, therefore, it is procedurally barred. See Atwater v. State, 788 So.2d 223, 227 (Fla.2001). Moore raised a variations of claims (6) and (9) on direct appeal and, therefore, they are procedurally barred. See Rutherford v. Moore, 774 So.2d 637, 645 (Fla.2000).