634 So.2d 1070 (1994)
Anton J. KRAWCZUK, Appellant,
v.
STATE of Florida, Appellee.
No. 79491.
Supreme Court of Florida.
March 17, 1994.
Rehearing Denied April 20, 1994.
*1071 James Marion Moorman, Public Defender, and Jennifer Y. Fogle, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Anton Krawczuk appeals his conviction of first-degree murder and sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and affirm both the conviction and sentence.
On September 13, 1990, a decomposing body was found in a rural wooded area of Charlotte County. Earlier, David Staker's employer notified Lee County authorities that he had missed several days of work and had not picked up his paycheck. When she went to his home, she found the door open, and it appeared that the house had been robbed. Near the end of September, the Charlotte County body was identified as Staker, and Gary Sigelmier called the Charlotte County Sheriff's office to report that he may have bought the property stolen from Staker's home. Sigelmier identified Krawczuk and Billy Poirier as the men who sold him the stolen goods, and Lee and Charlotte deputies went to the home Krawczuk and Poirier shared in Lee County. They found both men at home and took them to the Lee County Sheriff's office where, after waiving his Miranda[1] rights, Krawczuk confessed to killing Staker.
According to his confession, Krawczuk had known Staker for about six months and had a casual homosexual relationship with him, as did Poirier. The week before the murder, the pair decided to rob and kill Staker. Krawczuk called and arranged for him and Poirier to visit Staker. Krawczuk picked Poirier up at work and drove him home to change clothes. He parked in a shopping area, and the pair walked to Staker's house. Once there, they watched television for twenty to thirty minutes, and Krawczuk then suggested that they go to the bedroom. With the undressed trio on the bed, Krawczuk started roughing up Staker and eventually began choking him. Poirier assisted by holding Staker's mouth shut and pinching his nose closed. Staker resisted and tried to hit Krawczuk with a lamp, but Poirier took it away from him. The choking continued for almost ten minutes, after which Krawczuk twice poured drain cleaner and water into Staker's mouth. When fluid began coming from Staker's mouth, Poirier put a wash cloth in it and tape over Staker's mouth. Krawczuk tied Staker's ankles together, and the pair put him in the bathtub. They then stole two television sets, stereo equipment, a video recorder, five rifles, and a pistol, among other things, from the house and put them in Staker's pickup truck. After putting the body in the truck as well, they drove to Sigelmier's. Sigelmier bought *1072 some of the stolen items and agreed to store the others. Krawczuk and Poirier returned to their car, transferred Staker's body to it, and abandoned Staker's truck. Krawczuk had scouted a rural location earlier, and they dumped Staker's body there.
When the deputies went to Krawczuk's home, they had neither a search warrant nor an arrest warrant. Krawczuk moved to suppress his confession as the product of an illegal arrest. In denying that motion the court held that the deputies had probable cause to arrest Krawczuk when they went to his house but that Poirier's mere submission to authority did not provide legal consent to enter the house. Although the judge found that Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), had been violated, he also found Krawczuk's confession, made after Miranda rights were given and waived, admissible under New York v. Harris, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990). After losing the motion to suppress, Krawczuk sought to change his plea to guilty. The court held an extensive plea colloquy, during which Krawczuk was reminded that pleading guilty cut off the right to appeal all prior rulings. Krawczuk and his counsel also informed the court that Krawczuk wished to waive the penalty proceeding. Neither the state nor the court agreed to this, and the penalty phase took place in early February 1992.
Krawczuk refused to allow his counsel to participate in selecting the penalty phase jury and forbade her from presenting evidence on his behalf. The jury unanimously recommended that he be sentenced to death. Afterwards, the court set a date for hearing the parties and a later date for imposition of sentence. At the next hearing the judge, over Krawczuk's personal objection, stated that he would look at the presentence investigation report and the confidential defense psychiatrist's report for possible mitigating evidence. At the final hearing the court sentenced Krawczuk to death, finding three aggravators and one statutory mitigator.[2]
Krawczuk now argues that the court erred in denying his motion to suppress. The state, on the other hand, contends that by pleading guilty without preserving the right to appeal the suppression ruling Krawczuk waived the right to contest any pre-plea rulings. We agree.
As stated in Robinson v. State, 373 So.2d 898, 902 (Fla. 1979):
Once a defendant enters a plea of guilty, the only points available for an appeal concern actions which took place contemporaneously with the plea. A plea of guilty cuts off any right to an appeal from court rulings that preceded the plea in the criminal process, including independent claims relating to deprivations of constitutional rights that occur prior to the entry of the guilty plea.
During the plea colloquy, the trial judge told Krawczuk: "By entering a plea of guilty you give up the right to appeal anything this Court may have done up to this point. Do you understand?" After Krawczuk answered affirmatively, the judge asked if he were willing to give up the right to appeal, and Krawczuk again responded affirmatively. The record demonstrates an adequate plea colloquy and a valid guilty plea. Therefore, we hold that the court's ruling on the motion to suppress is not cognizable on appeal.
If the issue had been preserved, however, we would find it to have no merit. A ruling on a motion to suppress is presumed to be correct, Medina v. State, 466 So.2d 1046 (Fla. 1985), as is the instant ruling. As stated by the United States Supreme Court, and relied on by the trial court,
where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of Payton.

New York v. Harris, 495 U.S. at 21, 110 S.Ct. at 1645. The trial court held, and the record supports, that the authorities had probable cause to arrest both Krawczuk and Poirier *1073 when they went to their home.[3] Therefore, Krawczuk's later confession, made after receiving and waiving his Miranda rights, did not require suppression.
Krawczuk also argues that his mental state had deteriorated prior to trial and that a sufficient plea colloquy would have demonstrated the need for further psychiatric evaluations. We disagree. Florida Rule of Criminal Procedure 3.210(b) provides in pertinent part:
If, at any material stage of a criminal proceeding, the court of its own motion, or on motion of counsel for the defendant or for the state, has reasonable ground to believe that the defendant is not mentally competent to proceed, the court shall immediately enter its order setting a time for a hearing to determine the defendant's mental condition... .
A psychiatrist evaluated Krawczuk in April 1991 and found him mildly depressed. Later Krawczuk became increasingly nervous as his trial date approached, and the jail psychiatrist prescribed Elavil for him. At the plea colloquy Krawczuk was questioned extensively about his taking this medication and about its effect on him. Krawczuk testified that he had never attempted suicide and that the Elavil had a calming effect and helped him to go to sleep.
It is understandable that a defendant facing trial for first-degree murder would become increasingly nervous and depressed. Neither the defense nor the state, however, requested further evaluation, and we find nothing in the record showing a reasonable ground for the court to order such on its own. We hold, therefore, that the court conducted a proper and sufficient plea colloquy and that this argument has no merit.
Sufficient competent evidence supports Krawczuk's conviction, and we hereby affirm it.
Turning to the sentencing phase, Krawczuk claims that he should be given a new sentencing proceeding because of Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), which invalidated our former standard jury instruction on the heinous, atrocious, or cruel aggravator. This issue is procedurally barred because Krawczuk did not object to the wording of the instruction given to his jury. Thompson v. State, 619 So.2d 261 (Fla.) cert. denied, ___ U.S. ___, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993). Moreover, this murder was heinous, atrocious, or cruel under any definition of those terms and, thus, any error in the instruction was harmless beyond a reasonable doubt. Thompson; Happ v. State, 618 So.2d 205 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 328, 126 L.Ed.2d 274 (1993).
The trial court found that the following aggravators had been established: committed during a robbery and for pecuniary gain; committed in a heinous, atrocious, or cruel manner; and committed in a cold, calculated, and premeditated manner. The record demonstrates the existence of these aggravators beyond a reasonable doubt, and we approve their application in this case. The trial court found a single statutory mitigator, i.e., that Krawczuk had no significant history of prior criminal activity.
Krawczuk now argues that the court erred in failing to find the existence of nonstatutory mitigators. The court, however, carefully considered the psychiatrist's report and the presentence investigation report[4] and found that the record did not support the establishment of any nonstatutory mitigators.[5] The trial court followed the dictates *1074 of Campbell v. State, 571 So.2d 415 (Fla. 1990), and Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988), and there is competent substantial evidence to support the conclusion that death is the appropriate sentence. Cf. Durocher v. State, 604 So.2d 810 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1660, 123 L.Ed.2d 279 (1993); Pettit v. State, 591 So.2d 618 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 110, 121 L.Ed.2d 68 (1992).
Therefore, in addition to Krawczuk's conviction we also affirm his sentence of death.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Poirier pled guilty to second-degree murder and robbery in exchange for a 35-year sentence.
[3] "The probable cause standard for a law enforcement officer to make a legal arrest is whether the officer has reasonable grounds to believe the person has committed a felony. The standard of conclusiveness and probability is less than that required to support a conviction." Blanco v. State, 452 So.2d 520, 523 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985).
[4] Orally the judge stated that, in addition to these items, he considered "anything else I have been able to discern from these proceedings."
[5] The court found no disparate treatment between Krawczuk and Poirier, noting that Krawczuk "scouted the site to dispose [of] the body, made the arrangements with the victim to go to his house, physically strangled the victim with the co-defendant's assistance, placed the drain cleaner in the victim's mouth and steadied the co-defendant when he was on the point of becoming sick" and that the psychiatrist thought Krawczuk was overstating when he said he had been influenced by Poirier. Additionally, Krawczuk was older and bigger than Poirier.