PER CURIAM.
Anton Krawczuk appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const.
FACTS
The facts of the underlying murder were detailed in this Court’s opinion on direct appeal and are provided below:
On September 13, 1990, a decomposing body was found in a rural wooded area of Charlotte County. Earlier, David Staker’s employer notified Lee County authorities that he had missed several days of work and had not picked up his paycheck. When she went to his home, she found the door open, and it appeared that the house had been robbed. Near the end of September, the Charlotte County body was identified as Staker, and Gary Sigelmier called the Charlotte County Sheriffs office to report that he may have bought the property stolen from Staker’s home. Sigelmier identified Krawczuk and Billy Poirier as the men who sold him the stolen goods, and Lee and Charlotte deputies went to the home Krawczuk *199 and Poirier shared in Lee County. They found both men at home and took them to the Lee County Sheriffs office where, after waiving his Miranda [v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ] rights, Krawczuk confessed to killing Staker.
According to his confession, Krawczuk had known Staker for about six months and had a casual homosexual relationship with him, as did Poirier. The week before the murder, the pair decided to rob and kill Staker. Krawczuk called and arranged for him and Poirier to visit Staker. Krawczuk picked Poirier up at work and drove him home to change clothes. He parked in a shopping area, and the pair walked to Staker’s house. Once there, they watched television for twenty to thirty minutes, and Krawczuk then suggested that they go to the bedroom. With the undressed trio on the bed, Krawczuk started roughing up Staker and eventually began choking him. Poirier assisted by holding Staker’s mouth shut and pinching his nose closed. Staker resisted and tried to hit Krawczuk with a lamp, but Poirier took it away from him. The choking continued for almost ten minutes, after which Krawczuk twice poured drain cleaner and water into Staker’s mouth. When fluid began coming from Staker’s mouth, Poirier put a wash cloth in it and tape over Staker’s mouth. Krawczuk tied Staker’s ankles together, and the pair put him in the bathtub. They then stole two television sets, stereo equipment, a video recorder, five rifles, and a pistol, among other things, from the house and put them in Staker’s pickup truck. After putting the body in the truck as well, they drove to Sigelmier’s. Sigelmier bought some of the stolen items and agreed to store the others. Krawczuk and Poirier returned to their car, transferred Staker’s body to it, and abandoned Staker’s truck. Krawczuk had scouted a rural location earlier, and they dumped Staker’s body there.'
When the deputies went to Kraw-czuk’s home, they had neither a search warrant nor an arrest warrant. Kraw-czuk moved to suppress his confession as the product of an illegal arrest. In denying that motion the court held that the deputies had probable cause to arrest Krawczuk when they went to his house but that Poirier’s mere submission to authority did not provide legal consent to enter the house. Although the judge found that Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), had been violated, he also found Krawczuk’s confession, made after Miranda rights were given and waived, admissible under New York v. Harris, 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990). After losing the motion to suppress, Krawczuk sought to change his plea to guilty. The court held an extensive plea colloquy, during which Krawczuk was reminded that pleading guilty cut off the right to appeal all prior rulings. Krawczuk and his counsel also informed the court that Krawczuk wished to waive the penalty proceeding. Neither the state nor the court agreed to this, and the penalty phase took place in early February 1992.
Krawczuk refused to allow his counsel to participate in selecting the penalty phase jury and forbade her from presenting evidence on his behalf. The jury unanimously recommended that he be sentenced to death. Afterwards, the court set a date for hearing the parties and a later date for imposition of sentence. At the next hearing the judge, over Krawczuk’s personal objection, stated that he would look at the presen-tence investigation report and the confidential defense psychiatrist’s report for *200 possible mitigating evidence. At the final hearing the court sentenced Krawczuk to death, finding three aggravators and one statutory mitigator.
Krawczuk v. State, 634 So.2d 1070, 1071-72 (Fla.), cert. denied, 513 U.S. 881, 115 S.Ct. 216, 130 L.Ed.2d 143 (1994). On appeal, Krawczuk raised four claims: (1) that the trial court erred in denying his motion to suppress his confession, (2) that the trial court failed to conduct a proper plea colloquy to ensure that his plea was knowingly and intelligently given, (3) that the trial judge improperly instructed the jury on the heinous, atrocious, or cruel aggravator and erred in finding that it applied, and (4) that the trial court erred in failing to find the existence of nonstatu-tory mitigation. This Court denied each of his claims, and found competent substantial evidence to affirm his conviction and sentence. Id. at 1073-74.
Krawczuk filed his initial motion for postconviction relief on October 3, 1995 under Florida Rule of Criminal Procedure 3.850. On March 15, 2002, he filed an amended motion to vacate, raising twenty-four claims. A. Huff[1] hearing commenced on August 21, 2002, at which the lower court granted an evidentiary hearing for several claims, which was held on January 20-21, 2004, and March 8, 2004.
After hearing the evidence, Judge James Thompson denied Krawczuk’s motion in an expansive order.[2] Krawczuk now seeks review of some of his claims. As discussed in more detail below, we find no merit in Krawczuk’s claims and affirm the order denying postconviction relief and deny his petition for habeas relief.
Judicial Bias
In this issue Krawczuk argues that the postconviction court improperly denied his motion to disqualify the judge and that the judge demonstrated bias by relying on extra-record information. Because, Kraw-czuk cannot demonstrate bias, we disagree.
The question of whether a motion to disqualify is legally sufficient is a question of law, which is reviewed de novo. See Lynch v. State, 2 So.3d 47, 78 (Fla.2008). To the extent that Krawczuk is arguing that the trial court improperly denied his motion to disqualify, we conclude that this claim is without merit. To the extent that Krawczuk is alleging that the trial court erred by relying on extra-record information in violation of Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), we conclude that although there was error, the error was harmless.
A motion to disqualify is governed by section 38.10, Florida Statutes (2011), and Florida Rule of Judicial Administration 2.330. See Parker v. State, 3 So.3d 974, 981 (Fla.2009) (citing Cave v. State, 660 So.2d 705, 707 (Fla.1995)). When ruling on the motion, the trial judge is limited to determining the legal sufficiency of the motion:
The term “legal sufficiency” encompasses more than mere technical compliance with the rule and the statute. The standard for viewing the legal sufficiency of a motion to disqualify is whether the facts alleged, which must be assumed to be true, would cause the movant to have *201 a well-founded fear that he or she will not receive a fair trial at the hands of that judge. See Fla. R. Jud. Admin. 2.380(d)(1). Further, this fear of judicial bias must be objectively reasonable. See State v. Shaw, 643 So.2d 1163, 1164 (Fla. 4th DCA 1994). The subjective fear of a party seeking the disqualification of a judge is not sufficient. See Kowalski v. Boyles, 557 So.2d 885 (Fla. 5th DCA 1990). Rather, the facts and reasons given for the disqualification of a judge must tend to show “the judge’s undue bias, prejudice, or sympathy.” Jackson v. State, 599 So.2d 103, 107 (Fla.1992); see also Rivera v. State, 717 So.2d 477, 480-81 (Fla.1998). Where the claim of judicial bias is based on very general and speculative assertions about the trial judge’s attitudes, no relief is warranted. McCrae v. State, 510 So.2d 874, 880 (Fla.1987).
Parker, 3 So.3d at 982.
First, to the extent that Krawczuk is arguing that Judge Thompson improperly denied the motion to recuse himself, his claim is without merit. To establish bias, Krawczuk must demonstrate that he “fears that he ... will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge.” Fla. R. Jud. Admin. 2.330. In the instant case, the court properly denied Krawczuk’s motion to disqualify. Nothing in the record indicates that Judge Thompson was biased or prejudiced. As discussed below, although Judge Thompson’s actions were error, they were not indicative of bias. Judge Thompson provided multiple reasons for finding that Dr. Crown’s testimony was not credible, one of which was that Dr. Crown had only briefly met with Krawczuk.
Next, to the extent that Kraw-czuk is alleging that the court improperly relied on extra-record information, there was error, but the error was harmless beyond a reasonable doubt. The United States Supreme Court has condemned the practice of judges using extra-record information to impose the death penalty. Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). Further, we have recognized the impropriety of such actions and have stated:
In Gardner, the United States Supreme Court reminded us that the sentencing process, as well as the trial itself, must satisfy the requirements of the due process clause. Gardner held that using portions of a presentence investigation report without notice to the defendant and without an accompanying opportunity afforded to the defendant to rebut or challenge the report denied due process. That ruling should extend to a deposition or any other information considered by the court in the sentencing process which is not presented in open court. Should a sentencing judge intend to use any information not presented in open court as a factual basis for a sentence, he must advise the defendant of what it is and afford the defendant an opportunity to rebut it.
Porter v. State, 400 So.2d 5, 7 (Fla.1981) (citations omitted). Thus, it is well settled that if a trial judge uses information not stated in open court to make a determination that the death sentence is appropriate, he or she must give the defendant an opportunity to rebut the information.
We have found some instances of reliance on extra-record information to be harmless error:
[W]hile the sentencing order did state that the judge read all of the depositions, read the medical examiner’s report, and checked the victim’s probate records, all of which constitute extra-record materials, the trial judge revealed his consideration of these mat *202 ters both in letters to the parties and during a motion hearing prior to the penalty phase. Thus, unlike both Gardner and Porter, Vining was advised by the trial judge of his consideration of extra-record information and afforded an opportunity to rebut or impeach the information. Further, like Consalvo, the information relied upon in the sentencing order to support the aggravating factors was otherwise proven at trial. And like Lockhart, “given the overwhelming evidence supporting [the] aggravating factors, this error did not injuriously affect [the defendant’s] substantial rights.”
Vining v. State, 827 So.2d 201, 209-10 (Fla.2002) (citation omitted) (quoting Lockhart v. State, 655 So.2d 69, 74 (Fla.1995)); see also Consalvo v. State, 697 So.2d 805 (Fla.1996) (“Although we find that it was error for the trial court to utilize these out-of-court deposition statements, we find these errors are harmless beyond a reasonable doubt [because] the trial court here made reference to facts which were established at trial by evidence other than that referred to in the sentencing order.”); Lockhart v. State, 655 So.2d 69, 74 (Fla.1995) (finding a Gardner error where “the sentencing order indicate[d] that the judge relied on information from the newspaper articles to support his finding of no mitigation” but also finding “given the overwhelming evidence supporting three aggravating factors, this error did not injuriously affect Lockhart’s substantial rights”). We also find the error here harmless. Although Dr. Crown’s testimony was provided to establish possible mitigation, two other experts testified regarding Krawczuk’s mental health, which served as a part of the basis for Judge Thompson’s findings.
We find it disconcerting for a judge, sitting as finder of fact in an eviden-tiary hearing, to perform his own research into the credentials of an expert witness. We strongly discourage trial judges from performing such actions in the future. There is no reason apparent to this Court for the trial judge to perform his or her own research on the credibility of an expert witness outside of open court. However, in this case, we find the error to be harmless beyond a reasonable doubt because (1) the information was not used to sentence Krawczuk, (2) the information was readily available, and (3) the court’s order denying relief references facts that were established at the evidentiary hearing in addition to the extra-record information.
Ineffective Assistance of Counsel
Krawczuk raises several claims of ineffective assistance of counsel. We find that the postconviction' court properly denied relief on these claims.
Following the United State Supreme Court’s decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, the defendant must demonstrate both deficiency and prejudice:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.
Bolin v. State, 41 So.3d 151, 155 (Fla.2010) (quoting Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986)).
There is a strong presumption that trial counsel’s performance was not deficient. See Strickland, 466 U.S. at 690, *203 104 S.Ct. 2052. “A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” Id. at 689, 104 S.Ct. 2052. The defendant carries the burden to “overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ” Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). “Judicial scrutiny of counsel’s performance must be highly deferential.” Id. “[Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.” Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000). Furthermore, where this Court previously has rejected a substantive claim on the merits, counsel cannot be deemed ineffective for failing to make a merit-less argument. Melendez v. State, 612 So.2d 1366, 1369 (Fla.1992).
In demonstrating prejudice, the defendant must show a reasonable probability that “but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Because both prongs of the Stñckland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court’s factual findings that are supported by competent, substantial evidence, but reviewing the circuit court’s legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).
Johnston v. State, 63 So.3d 730, 737 (Fla.2011) (parallel citations omitted).
As this Court has said, “the obligation to investigate and prepare for the penalty portion of a capital case cannot be overstated.” State v. Lewis, 838 So.2d 1102, 1113 (Fla.2002).
[O]ur principal concern in deciding whether [counsel] exercised “reasonable professional judgmen[t]” is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel’s decision not to introduce mitigating evidence ... was itself reasonable. In assessing counsel’s investigation, we must conduct an objective review of their performance, measured for “reasonableness under prevailing professional norms,” which includes a context-dependent consideration of the challenged conduct as see[n] “from counsel’s perspective at the time.”
Orme v. State, 896 So.2d 725, 731 (Fla.2005) (quoting Wiggins v. Smith, 539 U.S. 510, 522-23, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)).
First, Krawczuk claims that counsel was ineffective for failing to investigate and present mitigation. Further, Kraw-czuk claims that counsel’s failure rendered his waiver of mitigation in the penalty phase invalid. The lower court found counsel deficient for failing to discover mitigation related to Krawczuk’s background, but found that Krawczuk was not prejudiced because he was emphatic that counsel not contact his family and probably would not have permitted counsel to present the information during the penalty phase. The postconviction court properly denied this claim.
*204 In Grim v. State, 971 So.2d 85 (Fla.2007), the defendant was tried and found guilty of first-degree murder and instructed his attorneys not to present mitigating evidence. The trial court conducted a Koon[3] hearing and determined that Grim freely, voluntarily, and knowingly decided to waive mitigation. Grim, 971 So.2d at 91. Grim expressed his desire multiple times during the proceedings to receive either a not guilty verdict or the death penalty. During postconviction proceedings, Grim argued that counsel was ineffective for failing to fully investigate and present mitigation and that these failures rendered his waiver invalid. Id. at 99. We noted:
When a defendant, against his counsel’s advice, refuses to permit the presentation of mitigating evidence in the penalty phase, counsel must inform the court on the record of the defendant’s decision. Counsel must indicate whether, based on his investigation, he reasonably believes there to be mitigating evidence that could be presented and what the evidence would be. The court should then require the defendant to confirm on the record that his counsel has discussed these matters with him, and despite counsel’s recommendation, he wishes to waive presentation of penalty phase evidence.
Grim, 971 So.2d at 100 (quoting Koon, 619 So.2d at 250). We further noted:
We have recognized that a defendant’s waiver of his right to present mitigation does not relieve trial counsel of the duty to investigate and ensure that the defendant’s decision is fully informed. See, e.g., State v. Lewis, 838 So.2d 1102, 1113 (Fla.2002) (“Although a defendant may waive mitigation, he cannot do so blindly; counsel must first investigate all avenues and advise the defendant so that the defendant reasonably understands what is being waived and its ramifications and hence is able to make an informed, intelligent decision.”).
Grim, 971 So.2d at 100. Ultimately, we found that the record did not support a claim of failure to investigate because counsel “did not latch onto Grim’s desire not to present mitigation, but instead, repeatedly tried to dissuade him.” Id.
Likewise, in Waterhouse, we found:
[TJhis was not simply a case where a defense attorney latched on to a defendant’s refusal to present mitigating evidence. The evidence in support of mitigation had already been investigated and accumulated as part of Water-house’s previous collateral and habeas proceedings. In fact, the record in this case includes the affidavit of Dr. Fred S. Berlin, who concluded that Waterhouse may have been under the influence of an extreme emotional disturbance at the time of the commission of the crime and that this may have impaired his capacity to conform his conduct to the requirements of the law. Defense counsel had also obtained the necessary paperwork to bring Waterhouse’s brother from Louisiana, but Waterhouse indicated that if that were done, he would contact his brother and tell him to avoid the proceedings. Additionally, after the trial court appointed Dr. Charles H. Whea-ton to examine Waterhouse for the possibility that he might suffer from organic *205 brain damage, Waterhouse refused to meet ■with the doctor.
Accordingly, because the only reason why mitigating evidence was not presented was entirely due to Waterhouse’s own conduct, we cannot deem defense counsel deficient for failing to present such evidence. Thus, we conclude that the trial court correctly denied an evi-dentiary hearing as to this claim.
Waterhouse, 792 So.2d at 1184 (footnote omitted).
In each of these cases, we concluded that trial counsel could not be deemed ineffective for following their client’s wishes not to present mitigation. “An attorney will not be deemed ineffective for honoring his client’s wishes.” Brown v. State, 894 So.2d 137, 146 (Fla.2004) (citing Waterhouse, 792 So.2d at 1183); Sims v. State, 602 So.2d 1253, 1257-58 (Fla.1992); see also Sims v. State, 602 So.2d 1253, 1257-58 (Fla.1992) (“[W]e do not believe counsel can be considered ineffective for honoring the client’s wishes”). The record demonstrates that Krawczuk would not permit his attorney to involve his family. Accordingly, counsel’s ability was limited by the defendant’s desire not to include his family. See Brown, 894 So.2d at 146. Therefore, we agree that counsel’s actions could not be deemed ineffective. Id.
It is clear that there was significant mitigation available that was not uncovered by counsel. However, it is equally clear that Krawczuk repeatedly insisted that counsel not pursue mitigation and not involve his family. Further, the postcon-viction court found that the information that would have been presented by the family was available through Dr. Keown’s report, which Krawczuk also refused to allow counsel to present. Because of Krawczuk’s instructions to counsel not to involve his family, we find that Krawczuk cannot establish prejudice.
Next, Krawczuk combines three of his postconviction 'claims and argues that the prosecutor made inappropriate remarks during the trial, that the trial court improperly instructed the jury, and that he received ineffective assistance of counsel because she failed to object to the comments made by the prosecutor and failed to request a jury instruction on mercy. The lower court denied these claims finding that they were procedurally barred and without merit, that any error made by the prosecutor was harmless, and that Krawczuk could not establish deficient performance. Because Krawczuk’s claim is not supported by the record and, even if it were, because Krawczuk cannot establish prejudice, the lower court properly denied relief on this claim.
Third, Krawczuk argues that counsel was ineffective for failing to object to the trial court’s instruction that sympathy should play no role in their deliberations, this claim is without merit. The trial judge used the standard jury instruction, stating that “[t]his case must not be decided for or against anyone because you feel sorry for anyone or are angry at anyone.” Fla. Std. Jury Instr. (Crim.) 3.10. Counsel cannot be deemed ineffective for failing to object to the standard instruction.
Fourth, Krawczuk argues that he received ineffective assistance of counsel when trial counsel failed to raise and litigate the voluntariness of his confession. The lower court granted an evidentiary hearing on this issue, but determined that Krawczuk was not entitled to relief because the claim was procedurally barred and without merit. Because Krawczuk is re-arguing the merits of the trial court’s denial of the motion to suppress his confession, the claim is procedurally barred. His *206 assertion that he received ineffective assistance of counsel is without merit. Additionally, his claim of ineffective assistance of counsel for failure to raise and litigate the voluntariness of his confession, the claim is insufficiently pleaded and without merit. As noted by this Court on direct appeal and by the lower court in its order denying postconviction relief, trial counsel raised this issue in a motion to suppress. See Krawczuk, 634 So.2d at 1072-73. Further, Krawczuk failed to allege that he would not have pleaded guilty but for counsel’s alleged deficiency. Because the record reflects that counsel raised the vol-untariness of Krawczuk’s confession in a motion to suppress and demonstrates that Krawczuk did not allege prejudice, we do not find that counsel was ineffective.
Finally, Krawczuk argues that trial counsel was ineffective for failing to offer testimony of mental health experts and others at the hearing on the motion for suppression. The lower court properly found the claim was unsupported by the evidence or law. Specifically, the lower court found that trial counsel completely and fully litigated the motion to suppress and that Krawczuk presented no additional evidence at his postconviction evidentiary hearing that would have changed the court’s denial of the motion to suppress.
Accordingly, we find that the lower court properly found that Krawczuk was unable to prove prejudice.
Prosecutor’s Remarks
Krawczuk argues that at trial the prosecutor made several erroneous remarks that led the jury to believe that they had no choice but to return a recommendation for the death sentence. Krawczuk further argues that the trial court improperly instructed the jury, which compounded this error. Finally, Krawczuk argues that trial counsel was ineffective for her failure to object or otherwise attempt to correct these errors. Each of these claims must fail.
Turning to the prosecutor’s remarks, Krawczuk claims that during voir dire and closing arguments, the prosecutor suggested that the law required the jury to recommend the death penalty if the aggravating circumstances outweighed the mitigating circumstances. Additionally, Kraw-czuk argues that the prosecutor suggested on multiple occasions that the jury should decide the case without regard for sympathy. The postconviction court correctly concluded that the claim was procedurally barred because trial counsel failed to object to the comments and the issue was not raised on direct appeal, nor did the remarks constitute fundamental error. See Rogers v. State, 957 So.2d 538, 547 (Fla.2007) (“We have consistently held that substantive claims of prosecutorial misconduct could and should be raised on direct appeal and are thus procedurally barred from consideration in a postconviction motion.”) (citations and internal quotations omitted); Lamarca v. State, 931 So.2d 838, 851 n. 8 (Fla.2006).
As for Krawczuk’s claim that counsel was ineffective for failing to object to these remarks, we find no deficiency where counsel was not permitted to participate in the proceeding. As it relates to the prosecutor’s comments regarding the jury’s recommendation, we have said:
Florida law provides that a penalty phase jury, after deliberating, shall render an advisory sentence to the court. That sentence is to be based on:
(a) Whether sufficient aggravating circumstances exist ...
(b) Whether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist; and
*207 (c) Based on these considerations, whether the defendant should be sentenced to life imprisonment or death.
§ 921.141(2)(a), Fla. Stat. (2008). “[A] jury is neither compelled nor required to recommend death where aggravating factors outweigh mitigating factors.” Cox v. State, 819 So.2d 705, 717 (Fla. 2002) (quoting Henyard v. State, 689 So.2d 239, 249-50 (Fla.1996)).
Anderson v. State, 18 So.3d 501, 517 (Fla.2009). Further, we found that a defendant is “not prejudiced by the improper statements of the prosecutors [where] the juries were given the proper instructions for analyzing aggravating and mitigating circumstances.” Anderson, 18 So.3d at 517. As noted by the postconviction court, the record indicates that the jury was properly instructed. Accordingly, we find that Krawczuk has not demonstrated prejudice.
Innocent of the Death Penalty
Krawczuk claims that he is innocent of the death penalty because he received a disparate sentence even though he was as culpable or less culpable than Poirier, who received a sentence of thirty-five years. Because this claim was, or should have been, raised on direct appeal, the lower court correctly found that it was procedurally barred.[4] Further, even if we consider the claim, it is without merit because Poirier pleaded guilty to second-degree murder. See Smith v. State, 998 So.2d 516, 528 (Fla.2008); England v. State, 940 So.2d 389, 406 (Fla.2006); Right v. State, 784 So.2d 396, 401 (Fla.2001) (“[I]n instances where the codefendant’s lesser sentence was the result of a plea agreement or prosecutorial discretion, this Court has rejected claims of disparate sentencing.”); Brown v. State, 473 So.2d 1260, 1268 (Fla.1985). Here, because Poirier pleaded guilty to second-degree murder and was sentenced to thirty-five years, Krawczuk’s claim is without merit. Melendez v. State, 612 So.2d 1366, 1368-69 (Fla.1992) (“Arguments relating to proportionality and disparate treatment are not appropriate where the prosecutor has not charged the accomplice with a capital offense.”).
Lastly, we previously found that Kraw-czuk was the more culpable party. As summarized by the lower court’s findings: (1) Krawczuk met the victim six months before the incident and started going to the victim’s house three months prior, but Poirier had only been with Krawczuk to the victim’s house one time prior to the murder; (2) Krawczuk initiated the events by suggesting they go to the bedroom, he initiated the roughhousing, he pinned the victim down, choked him, poured Crystal Vanish down the victim’s throat, and poured water in; and (3) Krawczuk was older and bigger than Poirier, more aggressive, and Poirier was called Kraw-czuk’s protégé. See Krawczuk, 634 So.2d at 1074 n. 5 (“Krawczuk ‘scouted the site to dispose [of] the body, made the arrangements with the victim to go to his house, physically strangled the victim with the co-defendant’s assistance, placed the drain cleaner in the victim’s mouth and steadied *208 the co-defendant when he was on the point of becoming sick’ and ... the psychiatrist thought Krawczuk was overstating when he said he had been influenced by Poirier. Additionally, Krawczuk was older and bigger than Poirier.”).
Krawczuk’s Confession
With respect to Krawczuk’s argument that his statement to the police was involuntary, the lower court properly found this claim procedurally barred because the issue was already considered and rejected by this Court on direct appeal. See Krawczuk, 634 So.2d at 1072 (“[W]e hold that the court’s ruling on the motion to suppress is not cognizable on appeal.... [Even] if the issue had been preserved ... we would find it to have no merit.”). Accordingly, Krawczuk’s attempt to raise this claim anew is procedurally barred.
PETITION FOR HABEAS CORPUS
Krawczuk’s single claim on petition for habeas corpus can be summarized as a complaint against this Court’s proportionality review. The subparts to this claim are that (a) this Court failed to complete a meaningful proportionality review because it did not look to other cases, (b) this Court’s review was hindered by the incomplete investigation into mitigating factors, and (c) appellate counsel did not raise disparate treatment on appeal. Because each of these subclaims should be denied, we deny the petition.
First, relating to Krawczuk’s first two points, a petition for habeas corpus is not the proper method for raising a claim that could have been raised on appeal or in a postconviction proceeding. Mills v. Dugger, 559 So.2d 578, 579 (Fla.1990) (“Habeas corpus is not to be used for additional appeals of issues that could have been or ... were raised on appeal or in other postconviction motions.”). Accordingly, Krawczuk’s allegations regarding trial counsel’s ineffectiveness and the lack of mitigation on the record are not properly before this Court. Additionally, they are a rehashing of his arguments in his postconviction appeal.
Further, to the extent that Krawczuk claims that this Court failed to perform a proportionality review, his argument is not supported by the record or caselaw. On direct appeal in the instant case, we stated:
The trial court followed the dictates of Campbell v. State, 571 So.2d 415 (Fla.1990), and Rogers v. State, 511 So.2d 526 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988), and there is competent substantial evidence to support the conclusion that death is the appropriate sentence. Cf. Durocher v. State, 604 So.2d 810 (Fla.1992), cert. denied, 507 U.S. 1010, 113 S.Ct. 1660, 123 L.Ed.2d 279 (1993); Pettit v. State, 591 So.2d 618 (Fla.), cert. denied, 506 U.S. 836, 113 S.Ct. 110, 121 L.Ed.2d 68 (1992).
Krawczuk v. State, 634 So.2d 1070, 1073-74 (Fla.1994). Thus, the Court found the death sentence appropriate. This Court has stated, “[A] proportionality review is inherent in this Court’s direct appellate review and the issue is considered regardless of whether it is discussed in the opinion or raised by a party....” Patton v. State, 878 So.2d 368, 380 (Fla.2004). The Patton court further explained:
“The mere fact that proportionality is not mentioned in the written opinion does not mean that no proportionality review was conducted.” Ferguson v. Singletary, 632 So.2d 53, 58 (Fla.1994) (citing Booker v. State, 441 So.2d 148, 153 (Fla.1983)). In Booker, this Court explained that failure to mention proportionality in its opinion does not mean that the Court did not consider it. See *209 441 So.2d at 153. This Court stated that a proportionality review “is an inherent aspect of our review of all capital cases. We need not specifically state that we are doing that which we have already determined to be an integral part of our review process.” Id.
Patton, 878 So.2d at 380. Further, relating to the argument that the Court did not mention other cases in its review, we have said:
[Although we did not specifically mention other capital cases in our decision on Booker’s direct appeal, we did in fact undertake proportionality review. That review is an inherent aspect of our review of all capital cases. We need not specifically state that we are doing that which we have already determined to be an integral part of our review process.
Booker v. State, 441 So.2d 148, 153 (Fla.1983). Additionally, we have stated, “We reject the assertion that in our written opinion we must explicitly compare each death sentence with past capital cases.” Messer v. State, 439 So.2d 875, 879 (Fla.1983). Accordingly, Krawczuk’s argument that this Court’s failure to explicitly weigh the proportionality of his sentence in its opinion must fail.
Finally, as it relates to Krawczuk's third point and to the extent that Krawczuk argues that appellate counsel failed to raise his and Poirier’s disparate sentencing, this argument is not supported by the record. Appellate counsel did mention Poirier’s sentence in the initial brief although not as a distinct issue. Further, even if it had been raised as a distinct issue it would have been rejected by this Court because Poirier pleaded to, and was convicted of, a lesser offense. We noted in our opinion that Krawczuk was the more culpable defendant. See Krawczuk, 634 So.2d at 1073 n. 5. We have repeatedly upheld death sentences where a codefen-dant pleaded guilty and received a life sentence. See Smith v. State, 998 So.2d 516, 528 (Fla.2008); England v. State, 940 So.2d 389, 406 (Fla.2006); Kight v. State, 784 So.2d 396, 401 (Fla.2001) (“[I]n instances where the codefendant’s lesser sentence was the result of a plea agreement or prosecutorial discretion, this Court has rejected claims of disparate sentencing.”); Brown v. State, 473 So.2d 1260, 1268 (Fla.1985). We do not address the remainder of Krawczuk’s petition because it is a reassertion of his claims on appeal of the denial of his postconviction motion.
For the foregoing reasons, we affirm the court’s denial of Krawczuk’s motion for postconviction relief. Additionally, we deny his petition for writ of habeas corpus.
It is so ordered.
CANADY, C.J., and LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
PARIENTE, J., concurs in result with an opinion.

. Huff v. State, 622 So.2d 982 (Fla.1993).

. We take this opportunity to note that the delay between the evidentiary hearing and the issuance of the order denying relief was unusually long. Although the evidentiary hearings were held in January and March 2004, the court did not issue its order until January 25, 2010. During oral argument, appellate counsel could not offer an explanation for the delay. We are concerned that this sort of delay undermines the interests of justice.

. Koon v. Dugger, 619 So.2d 246 (Fla.1993). Koon is not applicable to the present case because the penalty phase occurred in 1992, before Koon was decided. See, e.g., Waterhouse v. State, 792 So.2d 1176, 1184 (Fla.2001) (“Koon is technically inapplicable to this case because the penalty phase proceedings below occurred some three years prior to the Koon decision becoming final....”); Allen v. State, 662 So.2d 323, 329 (Fla.1995) (noting that the ruling in Koon was prospective).

. We addressed the issue in a footnote:
The court found no disparate treatment between Krawczuk and Poirier, noting that Krawczuk “scouted the site to dispose [of] the body, made the arrangements with the victim to go to his house, physically strangled the victim with the co-defendant’s assistance, placed the drain cleaner in the victim’s mouth and steadied the co-defendant when he was on the point of becoming sick” and that the psychiatrist thought Krawczuk was overstating when he said he had been influenced by Poirier. Additionally, Krawczuk was older and bigger than Poirier.
Krawczuk, 634 So.2d at 1073 n. 5 (quoting trial court’s order).