ROTHENBERG, J.
Josué Cotto appeals from a denial of his motion for postconviction relief, filed pursuant to Florida Rule of Criminal Procedure 3.850. We affirm in part, reverse in part, and remand for an evidentiary hearing.
The facts are undisputed. On December 1, 2002, Cotto, for no discernable reason, approached a stranger, Eric Martinez, on a South Beach street, told him he had just been ripped off while attempting to buy cocaine, took out a gun, pointed it at Mr. Martinez’s stomach, and asked Mr. Martinez whether he wanted anyone killed. When Mr. Martinez said, “No,” Cotto put the gun in his pocket and walked away. Mr. Martinez immediately called the police. Detective Motola, one of the responding officers, saw Cotto walking down the street holding a gun, ordered him to drop it, took him into custody, and recovered the gun.
On the day before trial, on June 21, 2005 (more than two-and-one-half years after Cotto’s arrest), defense counsel requested a continuance so that he could “explore” the issue of whether Cotto was legally insane at the time of the commission of the offense. When the trial court asked defense counsel why he was raising a potential insanity defense for the first time at the eleventh hour, with “a jury sitting right outside” the courtroom, defense counsel responded:
Well, frankly, Your Honor, this is an issue that the defendant raised with me and I could not answer it frankly for him as to whether he was, whether he met the legal criteria for being insane at the time he committed these offenses.
I don’t know how to explain it to the Court other than when questioned by my defendant today in the jury room on why isn’t this an issue in his defense, I don’t have a clear cut answer for him as to why it isn’t an issue.
You know, it may be an issue that I should have explored at an earlier time. I don’t have much to say about it other than it was a question that he asked me and a very pointed question that I’m unable to give him a legal answer to at this particular point in time.
At this time, I’m not prepared to present an insanity defense at trial.
It is an issue that the defendant raised with me and he may be legally correct on this. I don’t know how to answer it.
I don’t know what else to say other than it seems there may be some good cause here and I cannot tell the defendant that I have a legal answer to give him as to whether he was insane at the time of the offense.
It can only be confirmed by the doctors that examined him in the past and it probably should have been something that I should have asked them to explore when we had all the competency evaluations, but I focused on competency.
The trial court denied defense counsel’s motion for a continuance.
The next day, before trial commenced, defense counsel informed the trial court that he filed a notice of intent to rely on an insanity defense. The trial court found that the insanity issue was a delay tactic, *1028 did not allow defense counsel to present an insanity defense, and proceeded to trial.
The jury found Cotto guilty of carrying a concealed firearm, aggravated assault with a firearm, and possession of a firearm by a convicted felon.[1] The trial court sentenced Cotto: (1) as a prison releasee reoffender for the charge of aggravated assault with a firearm to a minimum mandatory sentence of five years in prison; and (2) and as a habitual felony offender for the charges of carrying a concealed firearm and possession of a firearm by a convicted felon to ten years and thirty years in prison, respectively. The trial court ordered the two habitual offender sentences to run concurrently with each other, and consecutively to the prison re-leasee reoffender sentence.
Cotto then filed a pro se rule 3.850 motion for postconviction relief in which he advanced two pertinent arguments.[2] First, Cotto argued his attorney was deficient for failing to timely investigate, prepare, or present an insanity defense. In support thereof, Cotto alleged: he has a long, documented history of mental illness and drug dependency; he was found legally incompetent while awaiting trial; Detective Motola testified that, at the time of the arrest, Cotto “kept talking to himself,” and “seemed somewhat bizarre in his mannerisms and speech,” making the detective wonder “what was the matter with him”; asking a stranger whether he wanted anyone killed is “obviously not something a sane person would do”; and he was “obviously out of his mind the day of these crimes.” Cotto argued that but for counsel’s failure to investigate, prepare and present an insanity defense, “a competent and compelling temporary insanity defense would have been presented at trial, resulting in an acquittal as to all counts.”
Second, Cotto argued that under Hale v. State, 630 So.2d 521 (Fla.1994), a habitual offender sentence cannot be ordered to run consecutively to a prison releasee reof-fender sentence, and thus his sentence was illegal.
The trial court denied Cotto’s claims without an evidentiary hearing. Specifically, the trial court ruled that Cot-to’s ineffectiveness claim was facially insufficient because Cotto “failed to assert that, at the time of the offense, because of a mental disease or defect, he did not know the nature or consequences of his act or that he was unable to distinguish right from wrong.”[3] With respect to Cotto’s argument regarding consecutive sentencing, the trial court determined that Hale only prevented enhanced habitual offender sentences from being imposed consecutively to each other, and since a prison releas-ee reoffender sentence is not enhanced beyond the statutory maximum, it was lawful to run it consecutively to the habitual offender sentence. This appeal followed.
On appeal, Cotto advances several arguments, two of which merit discussion. First, Cotto alleges the trial court erred in summarily denying his claim that counsel was ineffective for failing to investigate, *1029 prepare, or present a defense of insanity. We agree.
Florida adheres to the Strickland test as the governing standard for claims of ineffective assistance of counsel. Krawczuk v. State, — So.3d -, 2012 WL 1207215 (Fla. 2012). “[F]or ineffective assistance of counsel claims to be successful, the defendant must demonstrate both deficiency and prejudice.” Id. at-. In demonstrating deficiency, “the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards.” Id. at-(quoting Bolin v. State, 41 So.3d 151, 155 (Fla.2010)). “In demonstrating prejudice, the defendant must show a reasonable probability that ‘but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ ” Krawczuk, — So.3d at - (quoting Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). “Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court’s factual findings that are supported by competent, substantial evidence, but reviewing the circuit court’s legal conclusions de novo.” Kraw-czuk, — So.3d at- (citing Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004)).
The trial court concluded Cotto’s claim for ineffective assistance of counsel was facially insufficient because Cotto did not allege he satisfied the M’Naghten test for insanity at the time of the commission of the crime. It appears the trial court concluded that since Cotto did not allege he was legally insane at the time the crimes were committed, he could not have been prejudiced by his attorney’s failure to investigate, prepare, or present an insanity defense, and therefore did not satisfy the “prejudice” prong in Strickland. We disagree.
Importantly, Cotto did not limit his claim of ineffective assistance to defense counsel’s failure to present an insanity defense. To the contrary, Cotto claimed that defense counsel was ineffective for failing to even investigate the applicability of an insanity defense. The efficacy of such a claim is not governed by the M’Naghten standard, but by: (1) whether defense counsel’s failure to investigate an insanity defense under the facts presented was outside the broad range of reasonably competent performance under the prevailing professional standards; and (2) whether the defendant can establish a reasonable probability that an investigation into an insanity defense by defense counsel would have ultimately resulted in the presentation of a viable insanity defense, and but for counsel’s unprofessional errors, the result of the proceeding would have been different.
Given the allegations and record evidence regarding Cotto’s mental infirmities, and in light of defense counsel’s admissions on the record regarding his failure to timely investigate what he admitted was a potentially viable insanity defense, we conclude Cotto’s motion was facially sufficient to warrant an evidentiary hearing. We therefore reverse the trial court’s summary denial of Cotto’s claim for ineffective assistance of counsel, and remand for an evidentiary hearing.
Cotto’s second claim involves a sentencing issue. Although we recognize that the sentencing issue will become moot as to Cotto if Cotto is ultimately granted a new trial,[4] we have elected to address the sen- *1030 fencing issue to provide a complete adjudication of the issues raised and argued, and to provide guidance to the trial courts regarding the issue.
Cotto argues that based on Hale, the trial court erred in imposing the enhanced habitual offender sentences consecutively to the five year prison releasee reoffender minimum mandatory sentence. Cotto argues these sentences were imposed for crimes arising out of the same criminal episode, and notes that the total duration of his consecutive sentences (thirty-five years) exceeds the maximum duration that would be allowable if the statutory maximum was ordered as to each offense and these sentences were ordered to run consecutively (twenty-five years).[5] Cotto argues that this is precisely what Hale forbids. We disagree.[6]
Even assuming, without deciding, that Cotto’s possession of a firearm and aggravated assault charges arose from a single criminal episode, the trial court’s imposition of the habitual offender sentences concurrently with each other and consecutively to the prison releasee reoffender sentence does not run afoul of Hale. As is explained below, we read Hale to forbid only the imposition of two or more consecutive sentences that have themselves been enhanced and which arise from the same criminal episode.
In Hale, the defendant was convicted for separate charges for the (1) sale and (2) possession of the same cocaine. Hale, 630 So.2d at 522. The sentencing scoresheet provided a recommended range of four- and-one-half to five-and-one-half years. Id. at 523. However, under section 775.084(4)(b), Florida Statutes (1991), because Hale was found to be a habitual violent felony offender, the trial court had the discretion to enhance Hale’s sentence to a maximum of thirty years per count, with each count carrying a ten-year minimum mandatory sentence. Id. The trial court sentenced Hale to two consecutive twenty-five year habitual violent felony offender terms, one for each conviction, with each sentence carrying a ten-year minimum mandatory sentence. Id. Accordingly, Hale was required to serve a minimum of twenty years before being eligible for parole.
The Florida Supreme Court held that the sentence was illegal, reasoning that the legislature did not empower trial courts to run enhanced sentences consecutively to one another when the charges arise out of the same criminal episode. Id. at 524. *1031 The Court examined the legislative intent, noting that:
[B]y enacting sections 775.084 and 775.0841, Florida Statutes (Supp.1988), the legislature intended to provide for the incarceration of repeat felony offenders for longer periods of time. However, this is accomplished by enlargement of the maximum sentences that can be imposed when a defendant is found to be an habitual felon or an habitual violent felon.
Id. (quoting Daniels v. State, 595 So.2d 952 (Fla.1992)). Thus, the Court determined:
[T]he legislative intent is satisfied when the maximum sentence for each offense is increased. We find nothing in the language of the habitual offender statute which suggests that the legislature also intended that, once the sentences from multiple crimes committed during a single criminal episode have been enhanced through the habitual offender statutes, the total penalty should then be further increased by ordering that the sentences run consecutively.
We conclude that, under the statutory penalty for each offense, the trial court may sentence this defendant separately for possession, and sentence him separately for the sale, and make each sentence consecutive to the other. However, the trial court is not authorized, in our view, to both enhance Hale’s sentence as a habitual offender and make each of the enhanced sentences for the possession and sale of the same identical piece of cocaine consecutive, without specific legislative authorization in the habitual offender statute.
Id. at 524-25 (emphasis added).
As established above, Hale prevents a trial court from imposing a sentence that has been enhanced under the habitual offender statute consecutively to another sentence that has also been enhanced under the habitual offender statute, when the charges arise from the same criminal episode. Thus, before imposing sentences for counts arising out of the same criminal episode consecutively, a trial court must determine whether the sentence is considered an enhanced sentence within the meaning of Hale. As will be demonstrated below, sentences imposed pursuant to the habitual felony offender statute, habitual violent felony offender statute, and violent career criminal statute are enhanced sentences within the meaning of Hale because they provide for sentencing in excess of the statutory máxi-mums set forth in section 775.082, Florida Statutes.
The habitual offender statute, found in section 775.084(l)(a), states: “ ‘Habitual felony offender’ means a defendant for whom the court may impose an extended term of imprisonment, as provided in paragraph (4)(a) .... ” (emphasis added). Paragraph (4)(a) provides for sentencing of habitual felony offenders beyond the statutory maximum as follows:
The court, in conformity with the procedure established in paragraph (3)(a), may sentence the habitual felony offender as follows:
1. In the case of a life felony or a felony of the first degree, for life.
2. In the case of a felony of the second degree, for a term of years not exceeding 30.
3. In the case of a felony of the third degree, for a term of years not exceeding 10.
§ 775.084(4)(a), Fla. Stat. (2005) (emphasis added).
The habitual violent felony offender statute, found in section 775.084(l)(b), provides: ‘“Habitual violent felony offender’ *1032 means a defendant for whom the court may impose an extended term of imprisonment, as provided in paragraph (4)(b) .... ” (emphasis added). Paragraph 4(b) provides for sentencing of habitual violent felony offenders beyond the statutory maximum as follows:
The court, in conformity with the procedure established in paragraph (3)(a), may sentence the habitual violent felony offender as follows:
1. In the case of a life felony or a felony of the first degree, for life, and such offender shall not be eligible for release for 15 years.
2. In the case of a felony of the second degree, for a term of years not exceeding 30, and such offender shall not be eligible for release for 10 years.
3. In the case of a felony of the third degree, for a term of years not exceeding 10, and such offender shall not be eligible for release for 5 years.
§ 775.084(4)(b).
The violent career criminal statute, found in section 775.084(l)(d) provides: “ “Violent career criminal’ means a defendant for whom the court must impose imprisonment pursuant to paragraph (4)(d).... ” Paragraph 4(d) provides for sentencing of violent career criminals beyond the statutory maximum as follows:
(d) The court, in conformity with the procedure established in paragraph (3)(c), shall sentence the violent career criminal as follows:
1. In the case of a life felony or a felony of the first degree, for life.
2. In the case of a felony of the second degree, for a term of years not exceeding 40, with a mandatory minimum term of 30 years’ imprisonment.
3. In the case of a felony of the third degree, for a term of years not exceeding 15, with a mandatory minimum term of 10 years’ imprisonment.
§ 775.084(4)(d).
As demonstrated above, the habitual felony offender statute, habitual violent felony offender statute, and violent career criminal statute provide for sentencing in excess of the statutory máximums. Thus, under Hale, sentences imposed pursuant to these statutes may not be imposed consecutively to one another when the offenses were committed during the course of the same criminal episode.
Conversely, sentences imposed pursuant to the criminal punishment code, three-time violent felony offender statute, and prison releasee reoffender statute are not enhanced sentences within the meaning of Hale because they do not provide for sentencing in excess of the statutory máximums set forth in section 775.082.
The criminal punishment code, found in section 921.0024, Florida Statutes (2005), states, in relevant part: “The permissible range for sentencing shall be the lowest permissible sentence up to and including the statutory maximum, as defined in s. 775.082, for the primary offense and any additional offenses before the court for sentencing. The sentencing court may impose such sentences concurrently or consecutively.” § 921.0024(2) (emphasis added).
The three-time violent felony offender statute, found in section 775.084(l)(e), provides: “ ‘Three-time violent felony offender’ means a defendant for whom the court must impose a mandatory minimum term of imprisonment, as provided in paragraph (4)(c).... ” (emphasis added). Paragraph (4)(c) requires the trial court to impose a mandatory minimum sentence in accordance with the statutory maximum as follows:
*1033 (c) 1. The court, in conformity with the procedure established in paragraph (3)(b), must sentence the three-time violent felony offender to a mandatory minimum term of imprisonment, as follows:
a. In the case of a felony punishable by life, to a term of imprisonment for life;
b. In the case of a felony of the first degree, to a term of imprisonment of 30 years;
c. In the case of a felony of the second degree, to a term of imprisonment of 15 years; or
d. In the case of a felony of the third degree, to a term of imprisonment of 5 years.
2. Nothing in this subsection shall prevent a court from imposing a greater sentence of incarceration as authorized by law.[7]
§ 775.084(4)(c) (emphasis added).
The prison releasee reoffender statute, found in section 775.082(9)(a)3., provides:
If the state attorney determines that a defendant is a prison releasee reoffender as defined in subparagraph 1., the state attorney may seek to have the court sentence the defendant as a prison re-leasee reoffender. Upon proof from the state attorney that establishes by a preponderance of the evidence that a defendant is a prison releasee reoffender as defined in this section, such defendant is not eligible for sentencing under the sentencing guidelines and must be sentenced as follows:
a. For a felony punishable by life, by a term of imprisonment for life;
b. For a felony of the first degree, by a term of imprisonment of 30 years;
c. For a felony of the second degree, by a term of imprisonment of 15 years; and
d.For a felony of the third degree, by a term of imprisonment of 5 years.
(b) A person sentenced under paragraph (a) shall be released only by expiration of sentence and shall not be eligible for parole, control release, or any form of early release. Any person sentenced under paragraph (a) must serve 100 percent of the court-imposed sentence.
(c) Nothing in this subsection shall prevent a court from imposing a greater sentence of incarceration as authorized by law, pursuant to s. 775.084 or any other provision of law.
(d) 1. It is the intent of the Legislature that offenders previously released from prison who meet the criteria in paragraph (a) be punished to the fullest extent of the law and as provided in this subsection, unless the state attorney determines that extenuating circumstances exist which preclude the just prosecution of the offender, including whether the victim recommends that the offender not be sentenced as provided in this subsection.
(emphasis added).
Thus, under Hale, because sentences imposed pursuant to the criminal punishment code, three-time violent felony offender statute, or prison releasee reoffender statute are not enhanced beyond the statutory maximum, they may be imposed consecutively to one another and to sentences imposed under the habitual felony offender statute, the habitual violent felony offender statute, and the violent career criminal statute, even if the offenses were committed during the course of the same criminal episode.
*1034 In this case, the trial court imposed two sentences enhanced under the habitual felony offender statute concurrently with each other, and consecutively to a prison releasee reoffender minimum mandatory sentence. As established above, a prison releasee reoffender sentence is not an “enhanced sentence” within the meaning of Hale. “Unlike a habitual offender sentence, a PRR sentence is not enhanced beyond the statutory maximum; rather, the PRR statute establishes that the only lawful sentence for a PRR offender is the statutory maximum, which must be served in its entirety.” Reeves v. State, 920 So.2d 724, 726 (Fla. 5th DCA 2006) (citing § 775.082(9), Fla. Stat. (2004)). Because the trial court did not order that Cotto serve two or more enhanced sentences consecutively, the structure of the sentences did not run afoul of Hale.
We note that our holding directly conflicts with the Fifth District’s decision in Williams v. State, 10 So.3d 1116 (Fla. 5th DCA 2009). There, the Fifth District reversed the trial court’s imposition of a sentence enhanced under the habitual violent felony offender statute consecutively to a prison releasee reoffender sentence arising from the same criminal episode. The Fifth District determined that Hale stood for the proposition “that once the habitual offender sentencing scheme was utilized to enhance a sentence beyond the statutory maximum on one or more counts arising from a single criminal episode, consecutive sentencing cannot be used to further lengthen the overall sentence.” Id. at 1117 (citing Fuller v. State, 867 So.2d 469 (Fla. 5th DCA 2004)) (emphasis added). Thus, under the Fifth District’s holding, a trial court cannot impose a sentence enhanced under the habitual offender statute consecutively to any other sentence, irrespective of whether the latter sentence is an enhanced sentence. For the reasons set forth in our analysis above, we disagree with this broad proposition, and hold that Hale only precludes a trial court from imposing an enhanced sentence consecutively to another enhanced sentence. We therefore certify direct conflict with the Fifth District.
Affirmed in part; reversed in part and remanded; direct conflict certified.

. Cotto was also convicted of improper exhibition of a weapon and possession of a firearm with an altered identification. Because he was sentenced on these counts to time served, they are immaterial to our analysis and will not be discussed further.

. Cotto raised various other claims in his rule 3.850 motion, several of which he again raised on this appeal. We need not discuss these claims, however, because we conclude they are without merit.

.The trial court was referring to the M'Naghten test, which is the governing standard in Florida for the affirmative defense of insanity, and which is codified in section 775.027, Florida Statutes (2005).

. This Court takes no position on the merits of Cotto’s claim that an investigation would *1030 have led to a viable insanity defense.

. Possession of a firearm by a convicted felon is a second degree felony, normally punishable by up to fifteen years in state prison. Carrying a concealed firearm is a third degree felony, normally punishable by up to five years in state prison. Aggravated assault with a firearm is a third degree felony, normally punishable by five years in state prison. Thus, if these sentences were run consecutively under the normally applicable statutory máximums, the total duration would be twenty-five years.

. We note that, prior to filing the postconviction motion currently under review, Cotto filed a rule 3.800(b) motion arguing that his sentence was illegal for the same reasons now advanced on appeal. The trial court denied the motion and, when Cotto appealed that denial, this Court issued a per curiam affir-mance. Cotto v. State, 990 So.2d 1072 (Fla. 3d DCA 2008). Under normal circumstances, the law of the case doctrine would preclude a litigant from advancing an argument on appeal that has already been affirmed by this Court. However, it is well-settled that “an illegal sentence may be corrected even after it has been erroneously affirmed.” Bedford v. State, 633 So.2d 13, 14 (Fla. 1994). Although we do not conclude that the sentence is illegal, we write to certify direct conflict with the Fifth District’s decision in Williams v. State, 10 So.3d 1116 (Fla. 5th DCA 2009).

. It is important to note that such a legislative statement of intent is not found in either the habitual felony offender or the habitual violent felony offender statutes.